505 P.2d 569

**STATE of Arizona, Appellee,**

**v.**

**Jim Lee REAM and Conrad James Badt, Appellants.**

**No. I CA–CR 468.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 30, 1973.

Gary K. Nelson, Atty. Gen. by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Jay H. Bundy, Kingman, for appellants.

HAIRE, Judge.

Defendants Jim Lee Ream and Conrad James Badt were convicted of the crime of possession of marijuana for sale, a felony, and received sentences of not less than two years nor more than five years in the Arizona State Prison.

Prior to trial the defendants filed, and the trial court denied, a motion to suppress

certain evidence consisting of marijuana found in the automobile in which the defendants had been riding immediately prior to their arrest. The sole question raised on this appeal concerns the propriety of the denial of the motion to suppress. The pertinent facts are as follows.

Shortly after midnight on June 17, 1970, a police officer of the City of Kingman, Arizona, noticed defendants in the company of three other individuals proceeding west on Highway 66 in a 1966 Buick automobile with out-of-state license plates. He decided to stop the automobile "for proof of ownership of the vehicle. I had in my own mind that the vehicle could possibly be stolen." The officer's reasons for suspecting that the auto might be stolen are well summarized by defendants' counsel on redirect examination as follows:

"Q  Mr. Chapin, as I understand, in your opinion when you first spotted the vehicle, the occupants just didn't fit the vehicle and this is because it was a 1966 car which was dirty which had five occupants who all had beards and who looked at you as you drove alongside them, is that correct?

"A  Not all of them had beards, but that's basically correct.

"Q  What other things did you actually observe that led you to the conclusion that they just didn't seem to fit the vehicle?

"A  It's hard to say. In my opinion they just didn't fit the vehicle.

"Q  This was more or less a hunch you had, is that correct?

"A  I can't explain it. It just is there.

"Q  Well, was it more than what you've told us you observed coupled with a hunch that you had?

"A  I guess hunch is as good of word for any.

"Q  But there was nothing unusual about their driving?

"A  No, sir.

"Q  And you had no information from your superiors that a vehicle of this description was suspect—involved in criminal activity that night, had you?

"A  No, sir." [1]

After the officer stopped the vehicle he found that the driver's operators license and the registration did not correspond, and the driver could not give the correct first name of the owner nor could he give the owner's address. While pursuing his questioning as to the vehicle owner's name and address, the officer asked the occupants of the vehicle (including defendants) to get out. At this point, and without entering the vehicle, the officer observed various contraband items in plain view in the car. On the back seat he saw a hand-rolled marijuana cigarette butt with a yellow stain. He walked from the passenger's side of the car to the driver's side for a closer look. The windows were rolled up. He then saw on the floor two more hand-rolled cigarette butts and a small white pill which appeared to him to be a "bennie". He also observed a complete hand-rolled marijuana cigarette made with yellow paper which had pinched unburnt ends. Based upon these observations of contraband items in plain view, the officer then proceeded to search the vehicle and found therein a large quantity of marijuana.

The defendants' only contention on appeal is that the evidence does not show "probable cause" sufficient to justify the initial stopping of the vehicle. We agree that prior to the initial stopping, the officer did not have "probable cause" to arrest defendants or search the vehicle in which they were riding within the accepted meaning of that term as used in search and seizure cases. However, as we stated in our recent opinion in State v. Ruiz, 19 Ariz. App. 84, 504 P.2d 1307 (Filed January 16, 1973), not every stopping or seizure of a person without probable cause constitutes a violation of that person's Fourth Amendment rights. Only those seizures which

---

1. Subsequent investigation revealed that the automobile was not in fact stolen.

are "unreasonable" are proscribed. In Ruiz, we reviewed several pertinent decisions, particularly that of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which that court recognized the necessity of police field interrogation procedures "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . ." 392 U.S. at 30, 88 S.Ct. at 1884. In Terry, the United States Supreme Court stated that in this type of case, the central inquiry is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."

Therefore, here the issue which we must determine is whether the initial stopping of the automobile in which defendants were passengers for a driver's license and registration check was, under the circumstances, a reasonable governmental invasion of the defendants' personal security. In determining "reasonableness in all the circumstances" Terry states that the court's "inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. . . . And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 19–21, 88 S.Ct. at 1879, 1880.

■■■ It is our opinion that the testimony presented to the trial court by the officer to the effect that defendants and the other occupants "did not appear to belong to the vehicle" and his "hunch" that this was a stolen vehicle did not meet the objective standard test enunciated in Terry so as to justify this particular stopping— this "particular governmental invasion of a citizen's personal security". Although we do not find any evidence of harassing, on the other hand we do not find any evidentiary basis for a *reasonably founded suspicion. See* Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966). In our view, if this particular stopping is to be upheld, it must be upheld on some basis of reasonableness other than the vague, unsubstantiated suspicions voiced by the officer.

■■ The state contends that even if the facts in this case were to be held insufficient to show a "reasonably founded suspicion" that the vehicle was stolen, still, the stopping was not unreasonable, because:

"The mere fact that a car is operating on the highway may be sufficient reason for police to check and see if the car is lawfully registered and licensed. The test is one of balancing the interests and needs of the state in its monumental task of regulating the highway and motor vehicles against the fleeting and minimal inconvenience suffered by motorists during the strictly limited stops."

We note that this view has been previously stated by Department A of this Court in State ex rel. Berger v. Cantor, 13 Ariz. App. 555, 479 P.2d 432 (1970). In that case, the court stated:

"Considering the highly mobile nature of our society, and the valid interest of the State in seeing that the highways remain safe for the use of all of its citizens, we believe that this was a valid exercise of the State's police power in furtherance of the State's legitimate interest." 13 Ariz.App. at 558, 479 P.2d at 435.

The Court quoted with approval the following excerpt from Lipton v. United States, 348 F.2d 591, 592, 593 (9th Cir. 1965):

"On June 18, 1964, Bakersfield, California, motorcycle police patrol officer Snow while on traffic control duty observed appellant, a youth 18 or 19 years old, driving on a city street in Bakersfield a 1951 Chevrolet automobile with Arizona state license plates. Snow was a traffic control motorcycle patrolman whose main duty pertained to traffic

**134**

control work. Pursuant to his assigned duty and utilizing the red light on his motorcycle, officer Snow stopped the Chevrolet driven by appellant to see if the driver had a driver's license.

\* \* \* \* \* \*

"Since appellant's car was subject to the licensing provisions of the California Vehicle Code, it was lawful for the officer to stop the car to investigate the driver's possession of a license to drive the car on the California highway in question. No other way was available to the officer to determine whether appellant possessed the required license. The momentary detention of appellant for this limited purpose was not an arrest of appellant. \* \* \* If stopping appellant for the sole purpose of inquiring whether he held a license for the activity in which he was engaged was in any sense a 'seizure' it was not an 'unreasonable' one, and did not violate any right given appellant by the Fourth Amendment made applicable to the State by the Fourteenth. \* \* \* A contrary holding would render unenforceable the State statute requiring that automobile drivers be licensed." (Citations omitted).

*Cf.* State v. Taras, 19 Ariz.App. 7, 504 P.2d 548 (Filed December 19, 1972).

■ We find the reasoning of Berger, *supra,* persuasive and applicable to the facts in this case. The initial stopping of defendants' vehicle having been for the lawful purpose of checking the registration, the evidence which was subsequently observed by the officer in plain view within the automobile was sufficient to furnish probable cause for a thorough search as an incident to the lawful arrest of the defendants. State v. Ruiz, *supra;* State v. Washington, 107 Ariz. 521, 489 P.2d 1201

(1971); Terry v. Ohio, *supra;* Wilson v. Porter, *supra;* United States v. Oswald, 441 F.2d 44 (9th Cir. 1971). We specifically note that no evidence has been presented in this case which would indicate any systematic discriminatory exercise by the state of the strictly limited power which we uphold in this opinion.

We therefore hold that the trial court properly denied defendants' motion to suppress and that the evidence which led to defendants' conviction was properly admissible.

The judgments and sentences entered by the trial court are affirmed.

JACOBSON, C. J., Division 1, and EUBANK, P. J., Department B, concur.