538 P.2d 770

**STATE of Arizona, Appellee,**

v.

**Gerald Carl ROSENBERG and Kathy Mandel Musselman, Appellants.**

**No. I CA–CR 860.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 12, 1975.

Bruce E. Babbitt, Atty. Gen. by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Steven M. Friedman, Phoenix, for appellants.

Wilson & Gaylord by Robert E. Gaylord, Flagstaff, for appellants.

## OPINION

JACOBSON, Presiding Judge.

The defendants Rosenberg and Musselman were convicted of possession of marijuana, a misdemeanor, placed on six weeks' probation and fined $330. They have brought this appeal to test the propriety of the trial court's denial of their motion to suppress.

On May 2, 1974 a Coconino County Deputy Sheriff, while on routine patrol at ap-

proximately 3:00 a. m., entered a roadside rest area, where 5 or 6 automobiles, including the defendants' were parked. The officer made a radio check of the license plates of the defendants' car, but none of the others, to see if the car was listed as stolen. Before receiving a response to this call, he approached the defendants' automobile, a Volkswagen "bug", to make an alleged registration check.

Upon approaching defendants' car, he could not see the occupants who were reclined inside, asleep. He knocked on the window with his flashlight, aroused the defendants and asked for license identification and registration. The defendants objected to the officer's intrusion upon their privacy but Rosenberg produced an Arizona driver's license. During this initial encounter, the officer noticed a plastic bag hanging on the passenger assist handle. He reached into the car and seized the bag and searched it, finding nothing. The officer again demanded proof of registration. Defendant Musselman then opened the glove compartment to look for the registration card, whereupon the officer, by shining the flashlight into the glove compartment saw two baggies of what he recognized to be marijuana. He reached into the vehicle, seized the baggies and placed the defendants under arrest. A further search was then conducted and additional marijuana was found in the door pocket and trunk of the automobile.

The defendants were charged by complaint in the justice court with possession of marijuana, and after a preliminary hearing were bound over to the superior court for trial. Prior to trial, the defendants moved to suppress the marijuana on the ground that it was a product of an illegal search and seizure, made in violation of the Fourth Amendment of the United States Constitution. The motion was submitted on the testimony from the preliminary hearing, was denied, and the matter proceeded to trial without a jury, whereafter the defendants were found guilty.

The State on appeal does not contend that the officer had probable cause to invade the defendants' automobile, nor to awaken them at 3:00 in the morning. Rather the justification by the State for the officer's initial intrusion in this case rests upon an assertion that the officer had the right to make a driver's license or vehicle registration check under authority of A.R.S. § 28–304(D) (1956) and the rationale of this court's decision in *State v. Ream*, 19 Ariz.App. 131, 505 P.2d 569 (1973)[1].

In *Ream*, this court held that a balancing of interests test was to be adopted to determine whether the right of a citizen to be free of interference by the police was outweighed by the state's legitimate interest in regulating safe travel on the highways. In *Ream*, which involved an out-of-state licensed car, this court relied on *State ex rel. Berger v. Cantor*, 13 Ariz.App. 555, 479 P.2d 432 (1970) (car stopped because of dangerously bald tire) and *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965) (out of state license to justify stop) in upholding the legitimate interest of the state to initially stop the Ream vehicle. However, this court characterized such a stopping as a "strictly limited power" which should not be abused by "discriminatory exercise."

Inherent in the *Ream* decision was an element of reasonableness of exercise and the "fleeting and minimal inconvenience suffered by the motorists during the strictly limited stop." [2] Applying the balancing of interest test and the reasonableness of

1. We note that the officer involved in this case was the same officer involved in *State v. Ream*.

2. Division 2 of this court has expressly declined to follow the rationale of *Ream*. *See* *State v. Ochoa*, 23 Ariz.App. 510, 534 P.2d 441 (1975); *State v. Puig*, 23 Ariz.App. 516, 534 P.2d 447 (1975).

the intrusion test to this case, the circumstances failed to justify the intrusion, in our opinion. First, the defendants' car was not being operated on the highway and thus technically the fact that the occupants of the vehicle did or did not have drivers' licenses was immaterial. Second, the intrusion occurred at 3:00 a. m. when reasonable men might suspect that the occupants were sleeping and thus the intrusion was more than merely a "fleeting and minimal inconvenience". Third, while we are not prepared to say the trial court incorrectly determined that the registration check was not merely a pretense to execute an illegal search, the circumstances of the officer checking only this "hippy" type vehicle, his failure to await the results of his radio check for stolen vehicle and his snatching articles from the car without probable cause, lends credence to the suspicion that the registration check was merely a subterfuge. Fourth and most important, there appears to be no evidence that the officer had any reason to believe that the car or occupants were in any manner dangerous to other persons, were in danger themselves or were engaged in any type of illegal or unsafe conduct. In short, we find no state interest which would justify this intrusion of this parked vehicle at the unreasonable time of 3:00 o'clock in the morning.

Having found the original intrusion improper, the evidence obtained as a result of that intrusion is inadmissible. The trial court therefore erred in denying defendants' motion to suppress. We do not intend, as the dissent seems to indicate, to carve out a "free zone" for rest areas. What we merely hold here is that under all the circumstances, the intrusion was unreasonable and not justified by a legitimate state interest.

The judgments of conviction and sentence are reversed.

HAIRE, C. J., Division 1, concurs.

EUBANK, Judge (concurring in part and dissenting in part).

I concur in the result reached by the majority that the officer went too far in this case. However, I disagree with that part of the reasoning that holds that the registration check was improper.

The basis of my dissent is that a roadside rest area, authorized pursuant to A.R. S. § 28–1869, is part of the State Highway System under the exclusive jurisdiction of the Department of Transportation (A.R.S. § 28–104) through the Transportation Board (A.R.S. §§ 28–105, 106) and its Director (A.R.S. §§ 28–107, 108). The area is not private property but is public highway property. The mere act of a person parking his vehicle in a rest area or on the shoulder of a road at night does not free him from the possibility of a registration check even though conducted at 3:00 A.M., especially, as in this case, where the appellant's registration was not in plain sight as required by A.R.S. § 28–305(D), which reads in part:

. . . The registration card shall at all times be carried in plain sight within the driver's compartment of the vehicle for which issued, and shall be subject to inspection by the vehicle superintendent or his authorized agent, members of the highway patrol or any peace officer.

A deputy sheriff is, of course, a peace officer. A.R.S. §§ 1–215(23), 38–461, 462.

The majority opinion seems to create a sanctuary or "free zone", cut out of the highway system, on which registration checks at 3:00 A.M. are not proper. I do not agree with this concept.