**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Miguel Angel CARRIZOZA–GAXIOLA,**
**Defendant-Appellee.**

No. 74–2968.

United States Court of Appeals,
Ninth Circuit.

June 9, 1975.
Rehearing Denied Oct. 16, 1975.

**240**

Christopher Pickrell, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellant.

Leon Thikoll (argued), Tucson, Ariz., for defendant-appellee.

## OPINION

Before BROWNING and WALLACE, Circuit Judges, and ENRIGHT,* District Judge.

WALLACE, Circuit Judge:

Carrizoza-Gaxiola was charged with transporting a stolen vehicle in foreign commerce in violation of 18 U.S.C. § 2312. Before trial, he moved to suppress evidence gained from an allegedly illegal stop. The district court granted his motion and the government appeals. We affirm.

Carrizoza-Gaxiola was observed and then stopped by a team of federal and state law enforcement officers outside Nogales, Arizona. The purpose of this joint effort was to intercept vehicles stolen in the Phoenix and Tucson areas and transported into Mexico at Nogales. The stop was made about 13 miles north of Nogales on Interstate 19, a major highway between Nogales and Tucson. Only vehicles that are traveling towards Mexico and that meet a specified profile are stopped. The profile includes types of vehicles that are commonly stolen in Phoenix and Tucson and then transported to Mexico. Among these are Ford LTD's of the model years 1970–74. If a vehicle meets the profile and if the officers suspect that it might be stolen, an officer in a marked Arizona Highway Patrol car drives onto the highway and stops the vehicle for a driver's license and automobile registration check. The officer then calls in the vehicle's identification number to a central information center to determine if it has been stolen. If so, the driver is arrested and the vehicle impounded. Vehicles that do not meet the profile pass through the area without interference.

In this case, Carrizoza-Gaxiola was driving a late-model Ford LTD when he entered the surveillance area. He was stopped because he appeared to be Mexican, because the car he drove appeared to be brand-new and because it had Mexican license plates. A check of the car's identification number revealed that it was stolen.

The government argues that the stop was authorized by Arizona law, specifically the following statutes:

> The registration card shall at all times be carried in plain sight within the drivers' compartment of the vehicle for which issued, and shall be subject to inspection by the vehicle superintendent or his authorized agent, members of the highway patrol or any peace officer.

Ariz.Rev.Stat. § 28–305(D).

> Every licensee shall have his operator's or chauffeur's license in his im-

---

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

mediate possession at all times when operating a motor vehicle and shall display the same, upon demand of a justice of the peace, a police officer or a field deputy or inspector of the department.

Ariz.Rev.Stat. § 28–423.

■ Some doubt surrounds the question whether these statutes authorize stops to check license and registration without founded suspicion. The Arizona Supreme Court has not addressed the issue and only one division of the Arizona Court of Appeals has so held. *State v. Ream,* 19 Ariz.App. 131, 505 P.2d 569, 571–72 (1st Div. 1973); *State ex rel. Berger v. Cantor,* 13 Ariz.App. 555, 479 P.2d 432, 434–35 (1st Div. 1970). Another division has expressly declined to follow this holding where, as here, the purpose of the stop is to determine whether a vehicle is stolen. *State v. Taras,* 19 Ariz. App. 7, 504 P.2d 548, 551 & n. 1 (2d Div. 1972) (dictum). However, we need not predict how the Arizona courts will resolve this question. The stop must comply with the Fourth Amendment.

■■ The government advances two arguments for the constitutionality of the stop. First, the government argues that our decision in *Lipton v. United States,* 348 F.2d 591 (9th Cir. 1965), permits stops without founded suspicion to check drivers' licenses and vehicle registrations. Assuming the vitality of that decision subsequent to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the rationale of *Lipton* is that laws requiring possession of drivers' licenses while driving could not otherwise be effectively enforced. *Id.* at 593. We have limited *Lipton* to that rationale; it permits stops without founded suspicion only to enforce laws susceptible of no other means of effective enforcement. *United States v. Bowen,* 500 F.2d 960, 964–65 (9th Cir.) (en banc); *see id.* at 972 n. 9, 973–74 (Wallace, J., dissenting), aff'd on separate issue, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). The government concedes that the purpose of this law enforcement effort was to detect stolen vehicles, not to check for compliance with licensing and registration requirements. The government has argued neither in this court, nor in the district court, that car thieves cannot be effectively apprehended by less obtrusive means.

The government's remaining argument is that the officers possessed founded suspicion to stop Carrizoza-Gaxiola. The facts known to the officers were: (1) a man appearing to be Mexican (2) was driving towards Nogales on a highway from Tucson (3) in a new appearing late-model Ford LTD (4) with Sonora, Mexico license plates; in addition, (5) each week some, but less than 30, late-model Ford LTD's are stolen in the Tucson and Phoenix areas and remained unrecovered, and (6) some of those cars turn up in Mexico.

■ Although this information provides grounds for believing that some of the late-model Ford LTD's traveling towards Nogales on Interstate 19 are stolen, it does not provide any means for determining which ones. Founded suspicion requires some reasonable ground for singling out the person stopped as one who was involved or is about to be involved in criminal activity. *United States v. Torres-Urena,* 513 F.2d 540, 542 (9th Cir. 1975); *United States v. Ward,* 488 F.2d 162, 169–70 (9th Cir. 1973) (en banc). Driving a car as common as a Ford LTD is not suspicious nor is driving it towards Nogales. That the driver appeared to be Mexican and that the car had Mexican license plates add nothing beyond residence in the country to which some stolen vehicles have been transported. Mexicans commonly drive into this country and then, not surprisingly, drive back.

Affirmed.

ENRIGHT, District Judge (concurring):

I concur in the result. Given the limited nature of the intrusion and considering the facts known to the officers at the time of the stop of this particular

car,[1] I would hold the validity of the stop based on founded suspicion to be an extremely close issue. However, I would uphold the trial court's evaluation in granting the motion to suppress.

I would not agree that the authority of *United States v. Torres-Urena,* 513 F.2d 540 (9th Cir. 1975), is determinative of the issue raised, and would, on the facts of that case, agree with the views expressed in the dissenting opinion. However, I would concur that while some evidence of suspicious activity was known to the officers, that quantum of proof required for a founded suspicion stop was not met. *United States v. Larios-Montes,* 500 F.2d 941 (9th Cir. 1974); *Wilson v. Porter,* 361 F.2d 412 (9th Cir. 1966).

1. At the time of the stop of the defendant's car, the officers knew that 1) in the Phoenix and Tucson areas, 30 vehicles, most of which were late model Ford LTD's and pickups, were reported stolen in any given week; 2) probably half of these vehicles would be transported to Mexico; 3) young addicts were stealing these vehicles to exchange them for heroin in Mexico; 4) the driver of the vehicle was a young Mexican male; 5) the vehicle was a Ford LTD in showroom condition; and 6) the vehicle was traveling toward Mexico.