564 P.2d 1252

The STATE of Arizona, Appellee,

v.

Ernesto Gonzales VILLAGRANA, Appellant.

No. 2 CA–CR 1012.

Court of Appeals of Arizona, Division 2.

March 17, 1977.

Rehearing Denied April 26, 1977.

Review Denied June 1, 1977.

Bruce E. Babbitt, Atty. Gen. by Russell Piccoli, Asst. Atty. Gen., Tucson, for appellee.

Solsberry, McDonald & Perry by John R. Perry, Jr., Nogales, for appellant.

OPINION

RICHMOND, Judge.

Ernesto Gonzales Villagrana appeals from his conviction of possession and transportation of marijuana, for which he was placed on probation for five years, with a fine of $440 as a condition thereof. He urges reversal on the grounds of error either in the trial court's denial of his motion to suppress or denial of his motion for new trial.

Appellant was a passenger in a car driven by Fidel Martinez Leyva that was stopped a short distance north of Tubac on the highway between Nogales and Tucson. The Department of Public Safety officer who

stopped the vehicle detected a strong odor of marijuana, ordered Leyva to open the trunk, and discovered 90 bricks of marijuana inside the trunk. The officer justified stopping the car on the following facts.

At approximately 9 p. m. near Milepost 14 on Interstate 19 north of Nogales, the officer had stopped another vehicle proceeding in a northerly direction because it was being driven by a Mexican male and its license plate lamp was out, preventing a registration check on the plate. The officer detected a strong odor of perfume that he suspected might have been used to mask the odor of marijuana, and requested the driver to open the trunk. The trunk was bare of any debris, spare tire or tools, and apparently had been sprayed recently with a deodorant. From this, the officer deduced that the driver was prepared to pick up a load of marijuana. He released the driver but followed the vehicle north at a distance of about a quarter of a mile. The vehicle proceeded north at a speed of about 50 m. p. h. and passed through Tumacacori, although the driver had told the officer that he was going to meet a couple of girls at the Tumacacori Bar. As the vehicle entered the area of the Tumacacori Mission, the officer saw headlights in the mission parking area blink on and off twice. Some twelve miles north of the first stop, the officer again stopped the vehicle and asked the driver why he had not stopped at Tumacacori. The driver stated he hadn't seen the girls at the Tumacacori Bar and had decided to go on to Tucson, and again was released.

The officer then drove south about 2½ miles and parked beside the highway. A minute or two later he saw an older model car proceeding north at about 40 m. p. h. It was occupied by two young Mexican males, and the driver appeared to be frozen to the wheel. The officer also observed that the rear end of the vehicle "was setting low" and "was swaying as if it had a heavy load in the back." The officer almost immediately stopped the vehicle, which was occupied by Leyva and appellant. The officer testified that it was not unusual in his experience to have more than one car involved in marijuana transactions, and that only two or three minutes elapsed between the time he released the perfumed vehicle the second time and the time he stopped the car in which appellant was a passenger.

■ While the accuracy of the officer's suspicions is no longer subject to dispute, we believe the facts fail to establish more than an accurate hunch and do not meet the requirements of *State v. Ochoa,* 112 Ariz. 582, 544 P.2d 1097 (1976), falling instead into the category of a proscribed stop for the purpose of discovering crime in the first instance, as distinguished from a stop made for the purpose of investigating a crime already known to have been committed. Granted that the officer's experience and observation might provide a reasonable suspicion that the first vehicle would receive a load of marijuana from another vehicle, there was no evidence linking the car driven by Leyva with the first vehicle, and appellant's Fourth Amendment protection against unreasonable seizures was violated when it was stopped. The resultant search was invalid and the motion to suppress the marijuana should have been granted.

■ Appellant also contends that the trial court should have granted his motion for a new trial based on admission of a statement by Leyva to the investigating officer that "we were going to get paid $350," despite a curative instruction to the jury to disregard it. The state agrees that the statement was inadmissible and the error fundamental, but argues that its admission was harmless, either because of the instruction or because there was abundant other evidence on which to base the conviction. Leyva was not present at trial, and the curative instruction could not restore appellant's Sixth Amendment right to confront and cross-examine him. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Nor is the evidence of

appellant's guilt overwhelming so as to reflect that the error, though fundamental, did not contribute to the guilty verdict, thereby rendering the error harmless beyond a reasonable doubt under *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973). Without Leyva's statement, the only evidence linking appellant to the crime was his presence in the vehicle containing the contraband. The evidence reflects that he told the arresting officers, and maintained consistently thereafter, that he was unaware of the cargo. The state argues that appellant, as a mechanic, must have been aware of the heavy load in the trunk, and from its odor must have known what it was, but such inferences are far too speculative to satisfy the *Anderson* test. The state's contention that evidence of appellant's failure of a polygraph test provided "conclusive proof" of guilt is refuted by *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962), and its qualifying requirement that if such evidence is admitted the jury should be instructed that the result tends neither to prove nor disprove any element of the crime charged but *at most* tends only to indicate that at the time of the examination defendant was not telling the truth. Once Leyva's statement was admitted, appellant was entitled to a new trial, and the evidence was so prejudicial that "the bell could not be unrung" by the court's admonition to the jury. See *State v. Gortarez,* 96 Ariz. 206, 393 P.2d 670 (1964).

The judgment and sentence thereon are vacated, and the case remanded with instructions to dismiss the charges against appellant.

HOWARD, C. J., concurring.

HATHAWAY, Judge, dissenting.

I agree with the majority that *Bruton* error in the case requires a new trial. I disagree with their finding that the search was invalid and their holding that the motion to suppress should have been granted.

In *State v. Taras,* 19 Ariz.App. 7, 504 P.2d 548 (1972), and in *State v. Ochoa,* 112 Ariz. 582, 544 P.2d 1097 (1976), the following quote was endorsed from *Wilson v. Porter,* 361 F.2d 412, 415 (9th Cir. 1966):

" . . . due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

I believe the totality of the circumstances provided a founded suspicion for the detention. (1) The arresting officer, experienced in drug activity surveillance and arrests, knew that hauls frequently involved collaboration of two or more vehicles; (2) the lead car was signalled by the blinking lights from the parked car at Tumacacori; (3) the lead car was perfumed, commonly done to mask the smell of marijuana, and the cargo area cleared, even of normally expected tools, in anticipation of a load; (4) the detained vehicle followed shortly thereafter at low speed, apparently heavily loaded and swaying from side to side; (5) the drivers of the lead car and the follow up vehicle both appeared nervous. The second appeared frozen to the wheel. Even in the absence of the scenario of a contemplated rendezvous anticipated by the officer, the heavily loaded swaying vehicle might well have been investigated as a highway hazard. Consequently, I believe the motion to suppress was properly denied.