599 P.2d 761
**STATE of Arizona, Appellee,**

v.

**Eugene F. JARZAB, Jr., Appellant.**

**No. 4571–PR.**

Supreme Court of Arizona,
In Banc.

July 27, 1979.
Rehearing Denied Sept. 11, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Georgia B. Ellexson, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Lane & Penrod, Ltd. by Clair W. Lane, Craig W. Penrod, Tempe, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant, Eugene Francis Robert Jarzab, Jr., was convicted of possession of marijuana, a misdemeanor. The Court of Appeals, in a memorandum decision, reversed. We accepted review. Opinion of the Court of Appeals, 1 CA–CR 3395 (filed January 11, 1979), vacated. Judgment of the Superior Court affirmed.

At about 1:40 a. m. on June 18, 1977, near Phoenix, Arizona, sheriff's deputy Russell Pearce while driving over an overpass saw a new Chevrolet Blazer four-wheel-drive truck stopped on the desert approximately one-quarter mile off of Interstate 10. Pearce turned his headlights on the truck and, when it appeared to be unoccupied, drove over to investigate. After he left his car and approached the truck, appellant appeared from behind some nearby bushes. He told the officer that the vehicle was his and that he had stopped to relieve himself. Appellant had a noticeable odor of alcohol on his breath. Pearce asked for identification from appellant to determine whether he was of legal drinking age. Appellant produced a valid Arizona driver's license which showed his age. Pearce then asked appellant for the truck's registration card.[1] When appellant opened the door of the truck to get the card, the interior lights came on and the deputy observed a plastic bag containing marijuana on the console.

At a suppression hearing, Pearce testified:

1. A.R.S. § 28–305(D) provides in part:
   "The registration card [of a motor vehicle] shall at all times be carried within the driver's compartment of the vehicle for which issued, and shall be subject to inspection by * * * members of the highway patrol or any peace officer."

2. Officer Pearce testified:
   "Q. Now, you say you observed an abandoned vehicle and you say you observed it as you came over this overpass?
   A. As I came over the other side my lights hit it.
   .     *     *     *     *     *     *

"Q. Are there usually people in that area?
A. No, sir.
Q. So then it would be strange to have a vehicle in the area?
A. That's correct, sir.
Q. You didn't know whether or not the truck was stolen when you went to investigate it. Did you?
A. No, sir. I had no idea why it was there at that time.
Q. You just wanted to see what was going on?
A. Yes, sir."

It is palpably clear that the investigation which Pearce then entered upon was reasonable and lawful. Therefore, the question governing the disposition of this case is whether subsequent events deprived the investigation of continuing legality.

Appellant does not argue that it was improper for the officer to investigate the status of the truck. His position is that any suspicion that the vehicle was abandoned[2] should have been "quickly dispelled when the defendant, virtually contemporaneously with the officer's arrival, approached and identified the vehicle as belonging to him." He urges that the officer was operating on "a hunch" or "a vague, unsubstantiated suspicion" and that his Fourth Amendment rights[3] were violated by conducting a further investigation because the investigative detention did not meet the test for reasonable police action set forth in *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976).

In *Hocker*, we said:

Q. Would you give the judge a description of an abandoned vehicle?
A. A vehicle without any occupants.
Q. So any vehicle without an occupant is an abandoned vehicle?
A. Temporarily it is. * * * "

3. The Fourth Amendment to the Constitution of the United States provides:
   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * * "

"This Court recently elucidated its position on the reasonableness standard and adopted the California test. *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (Filed Aug. 6, 1976), citing *Irwin v. Superior Court of Los Angeles County*, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969). While it is true that a temporary investigative detention is allowed under certain circumstances, these circumstances must be 'such as to distinguish the activity of the detained person from that of any other citizen' and must be based on an 'objective perception of events rather than the subjective feelings of the detaining officer.' In order to justify the intrusion, the state must be able to point to specific and articulable facts, which may be combined with rational inferences from those facts. Thus, even in the absence of bad faith, detention based on a 'mere hunch' is illegal. There must be a reasonable suspicion by the law enforcement officer that 'some activity out of the ordinary' is or had occurred, some suggestion to connect the detained person with the unusual activity, *and some indication that the activity is related to crime. State v. Fortier*, 113 Ariz. 332, 553 P.2d at 1208." 113 Ariz. at 456–57, 556 P.2d at 790–791. (Emphasis added.)

The federal test for determining the validity of an investigative detention is different from California's.[4] See *United States v. Contreras-Diaz*, 575 F.2d 740 (9th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); *United States v. Walling*, 486 F.2d 229 (9th Cir. 1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974). Constitutional perimeters are spelled out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There, the Supreme Court of the United States held that a police officer may effect a limited detention of an individual, not amounting to an arrest, if the officer's actions were reasonable under the circumstances. The Court did not hold that "some indication that the activity is related to crime" was an essential ingredient of the test of the police action.

"*Terry* requires a dual inquiry into the reasonableness of an investigatory stop. The reviewing court must determine: '(1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related "to the circumstances which justified the interference in the first place."' *Carpenter v. Sigler*, 419 F.2d 169, 171 (8th Cir. 1969)." *United States v. Stevie*, 578 F.2d 204, 207 (8th Cir. 1977).

A police officer cannot base his actions on "inarticulate hunches"; he "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra*, 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. (Footnote omitted.)

"Whether an officer's conduct was 'reasonable' or 'appropriate' depends on the facts and circumstances of the particular case, so that the decision in one case seldom furnishes a pat answer in another case. (Cites omitted.) A principle to be applied generally however is that in judging the reasonableness of the actions of the officer the circumstances before him are not to be dissected and viewed singly; rather they must be considered as a whole. So considered they are to be viewed through the eyes of a reasonable and cautious officer on the scene, guided by his experience and training. *See United States v. Davis*, 147 U.S.App.D.C. 400, 458 F.2d 819 (1972)." *United States v. Hall*, 174 U.S.App.D.C. 13, 15, 525 F.2d 857, 859 (1976).

An investigative stop will be deemed reasonable where the officer demonstrates some basis from which the court can determine that the police were not arbitrary or harassing. *United States v. Walling, supra; Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966).

4. See *In re Tony C.*, 21 Cal.3d 888, 148 Cal.Rptr. 366, 582 P.2d 957 (1978) for a detailed exposition of the current California test.

■ Our examination of *Terry v. Ohio* and federal cases subsequent to it in the light of the facts of this case leads us to disapprove the standard enunciated in *Irwin v. Superior Court*, supra, and adopted in *State v. Hocker*, supra, and *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976), because it is unduly restrictive of lawful police activities. When confronted with strange or unusual activities, a police officer, as the public's representative delegated with the responsibility of maintaining law and order, should satisfy himself as to the innocence of the activity by all reasonable, lawful means. We do not believe that an officer, when he commences an investigation, need be convinced that "criminal activity is afoot."

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.*, [392 U.S.] at 23, [88 S.Ct. 1868]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.*, at 21–22, [88 S.Ct. 1868]; see *Gaines v. Craven*, 448 F.2d 1236 (CA9 1971); *United States v. Unverzagt*, 424 F.2d 396 (CA8 1970)." *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972).

The Supreme Court of the United States in *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 335–36 (1977), set forth the test for Fourth Amendment violations in this fashion:

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonableness, of course, depends 'on a balance between the public interest, and the individual's right to personal security free from arbitrary interference by law officers.' *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)."

In the recent opinion of *Brown v. Texas*, ── U.S. ──, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979), the Supreme Court said that a central concern in balancing these competing considerations "has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers * * * *"

■ In applying the federal standard to the facts of this case, we do not find that Pearce's actions were unreasonable. The investigation began when the officer's attention was directed to a vehicle parked off the road in the desert at 1:40 a. m. Since the vehicle appeared to be abandoned, there was a reasonable suspicion that it could have been stolen. During the investigation, appellant appeared from out of the brush. The request that appellant produce identification to show he was old enough to drink was clearly reasonable. The request by the officer to see the registration card of the Chevrolet Blazer was in response to appellant's claim of ownership. Officer Pearce was not compelled to terminate his investigation of the apparently abandoned vehicle because of appellant's asserted ownership. The scope of the intrusion was fleeting and minimal and reasonably related to the circumstances justifying it. Balancing the public's interest in law enforcement against appellant's right to be free from arbitrary interference by law officers, such an investigation was constitutionally warranted.[5]

5. Appellant urges that the Court of Appeals decision in *State v. Rosenberg*, 24 Ariz.App. 341, 538 P.2d 770 (1975), should control here. We find that case inapposite. There, a Conconino County Deputy Sheriff entered a roadside rest area at 3:00 a. m., singled out a "hippy" vehicle, and decided to make a registration check. He awoke the occupants of the car, asked for a driver's license and car registration. He observed two plastic bags of marijuana in the glove compartment when it was opened. The trial court denied the defendant's motion to

Where a motion to suppress has been denied, the lower court will not be reversed unless the denial constitutes clear and manifest error or is an abuse of discretion. See *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978); *State v. Boyer*, 106 Ariz. 32, 470 P.2d 439 (1970). Considering all the circumstances and our conclusions as to the appropriate law, the denial of the motion to suppress was not error.

To the extent that *State v. Hocker* and *State v. Fortier* are incompatible or inconsistent with this decision, they are overruled.

Judgment affirmed.

HAYS and HOLOHAN, JJ., concurring.

GORDON, Justice (dissenting):

I dissent from the majority opinion. Initially, I do not perceive the distinction that the majority makes between the Federal and Arizona tests for determining the validity of an investigative detention. The majority opinion seems to assert that *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), only requires an officer to perceive unusual circumstances before he makes an investigative detention. The majority opinion states that *Terry* "did not hold that some indication that the activity is related to crime was an essential ingredient of the test of the police action." This is not the case.

The holding of *Terry, supra*, is couched in the following terms:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that *criminal activity may be afoot * * *.*" (Emphasis added.) 88 S.Ct. at 1884.

*Terry* also states that:

"* * * * a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating *possibl[e] criminal*

*behavior* even though there is no probable cause to make an arrest." (Emphasis added.) 88 S.Ct. at 1880.

Therefore, even under the Federal test, the unusual or suspicious conduct that an officer stops to investigate must be unusual or suspicious, *because it relates to possible crime.*

The recent United States Supreme Court opinion in *Brown v. Texas*, No. 77–6673, (U.S. Supreme Court, June 25, 1979), reiterates this requirement that the unusual or suspicious activity which prompts an investigative detention, must relate to possible crime. In that case, defendant Brown was stopped by two police officers, because he was in an area known for its high incidence of drug traffic, because he looked suspicious, and because the officers had never seen him in the area before. When Mr. Brown refused to tell the officers his name, he was arrested for violating a Texas law that made it a crime to not give your name and address to an officer who lawfully stopped and requested the information. The Supreme Court held that application of the Texas statute to the defendant violated his Fourth Amendment rights, *because the officers lacked any reasonable suspicion to believe that he was engaged or had engaged in criminal conduct.*

The majority opinion cites *Brown, supra*, for the proposition that a balancing need be done "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasion solely at the unfettered discretion of officers." Seemingly, the majority has neglected to notice that *Brown, supra*, also states that "[i]n the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, —— U.S. at ——, 99 S.Ct. at 2641.

In *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976), and *State v. Hocker*, 113 Ariz.

suppress. The Court of Appeals reversed, finding that the evidence supported the suspicion that the registration check was a subterfuge and that there was no evidence to show that

the sleeping occupants of the car were engaged in illegal conduct. Viewed in this light, the registration check was arbitrary and harassing.

450, 556 P.2d 784 (1976), we adopted the same type of test as *Terry, supra,* and *Brown, supra,* citing *Irwin v. Superior Court of Los Angeles County,* 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969):

> "There must be a reasonable suspicion by the law enforcement officer that 'some activity out of the ordinary' is or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime." *State v. Hocker,* 113 Ariz. 450, 457, 556 P.2d 784, 791.

The California Supreme Court has subsequently rejected dictum in *Irwin, supra,* which stated that the suspicious events must not be as consistent with innocent activity as with criminal activity. *In re Tony C.,* 21 Cal.3d 888, 148 Cal.Rptr. 366, 582 P.2d 957 (1978). That case, however, did not overrule *Irwin* and stated that the holding of *Irwin* was not based upon the dictum. Although this Court cited *Irwin* in both *Fortier* and *Hocker,* we have never adopted the above dictum.

I, therefore, disagree that *Fortier* and *Hocker* must be overruled. The distinction that the majority opinion trys to make between *Terry* and these cases simply does not exist. Moreover, the majority is offering law enforcement false security when it states that "[w]e do not believe that an officer, when he commences an investigation, need be convinced that 'criminal activity is afoot.'" Neither the Arizona, California nor United States Supreme Court cases require that an officer be *convinced* that criminal activity is afoot before he makes an investigatory check.

The officer may start any surveillance that he chooses, on the basis of suspicious or even innocent-appearing activities, and he may maintain this check or surveillance as long as he wishes. The cases do not in the slightest deter him from doing this. Instead, they merely deter the police officer from either arresting or temporarily detaining a person, or from searching or seizing his possessions before the officer has formed a founded articulable suspicion that some criminal activity is afoot and that the person is in some way connected to that activity. If his suspicion is "reasonable," within an objective definition of what a reasonable person under the same situation would perceive, *Terry, supra* then and only then, may the officer intrude upon the privacy of a person, which is afforded by the United States and Arizona constitutions.

I disagree with the majority's conclusion that an officer needs to be able to stop and question an individual about unusual activity that does not somehow indicate to the officer that "criminal activity may be afoot." *Terry, supra.* After coming to this conclusion, however, and overruling *Hocker, supra,* and *Fortier, supra,* in the process, the majority then attempts to justify the arresting officer's actions under the very standard that is articulated in these cases. The majority seems to suggest that potential criminal activity *was* afoot and does so by stating that "[s]ince the vehicle appeared to be abandoned, there was a reasonable suspicion that it could have been stolen." This is a misstatement of the facts. The "reasonable suspicion" that the car could have been stolen is not logically inferable from any view of the record in this case.

At the motion to suppress, the arresting officer indicated that he had received no reports of stolen vehicles, or any other type of disturbance in the area. Moreover, he testified that he had no idea why the truck was there when he went to investigate it; he just wanted to see what was going on. The defendant explained to the officer why he left the vehicle unattended and showed his license to prove he was of drinking age. There is not even any reason to believe that the driver acted intoxicated or that the officer suspected him of drunk driving. The officer merely thought he smelled liquor on the defendant's breath and checked to see if he was of drinking age. Moreover, the defendant's vehicle was parked approximately one fourth mile from a restaurant that was owned and operated by his parents, and may actually have been located on land that belonged to the driver's father.

Although the majority of this Court may have suspected under these circumstances

that this was a stolen vehicle, that is not the proper test of the officer's actions under either state or federal case law. The test is whether the officer suspected that the vehicle was stolen and whether his suspicion was reasonable, when weighed against what a reasonable person with similar experience would have suspected under those circumstances. *Terry, supra.* The arresting officer in this case never testified that he suspected the vehicle to be stolen. He stated that he approached the vehicle "because it's a little strange at 1:40 a. m. in the morning to have a vehicle sitting out in the desert." An officer cannot make an investigatory detention simply because it is 1:40 a. m. This might be an infringement on defendant's fundamental right to travel, which is not limited to daytime hours. The suspicious activities that an officer can investigate must be more than the wanderings of an insomniac, or one who works night shift at a restaurant in the desert.

The officer's request to see the defendant's registration was based on nothing more than an "inarticulate hunch." The United States Supreme Court has consistently refused to sanction such actions. *Terry, supra.* Because of the absence of any facts that would indicate that "criminal activity may be afoot," *Terry, supra,* the check of the car's registration, as an investigative search, violated the requirements of Arizona *and* Federal law.

The real issue in this case is whether the officer legitimately asked to see the defendant's registration, pursuant to A.R.S. § 28–305(D), which states that a car's registration is subject to inspection by members of the highway patrol or any peace officer.

In *State v. Ochoa,* 112 Ariz. 582, 544 P.2d 1097 (1976), however, we held that officers may not randomly stop vehicles to inspect for vehicle registrations. We stated that:

"[A.R.S. § 28–305(D) does not authorize] the stopping of travelers upon public

highways for the purpose of ascertaining whether the driver is violating the law. *In this we think there is a valid distinction between a stop made for the purpose of investigating a crime already known to have been committed and a stop for the purpose of discovering crime in the first instance.*" (Emphasis added.) *Ochoa,* 112 Ariz. 582 at 584, 544 P.2d 1097 at 1099.

*See also State v. Villagrana,* 115 Ariz. 285, 564 P.2d 1252 (App.1977); *State v. Gutierrez,* 27 Ariz.App. 226, 553 P.2d 1211 (1976).

The issue before this Court, then, is whether A.R.S. § 28–305(D) can be used to "discover crime in the first instance," after a legitimate investigation of a stopped vehicle has failed to reveal any potential criminal activity. For the very reasons that we discussed in *Ochoa,* I see no reason for making such a distinction. If an officer cannot use this statute to stop a car for the purpose of discovering crime, there is also no reason why he should be able to use it to ferret out crimes that may involve a stopped car.[1]

"[The Constitution protects] travelers upon the public highways from harassment by government agents if there is no basis to support a founded suspicion of criminal activity. Founded suspicion requires some reasonable ground for singling out a person as one who was involved or about to be involved in criminal activity." *Ochoa,* 112 Ariz. 582 at 584, 544 P.2d 1097 at 1099.

I believe that the Court of Appeals opinion properly disposed of this case. I would, therefore, have denied review of the Court of Appeals opinion.

CAMERON, Chief Justice (concurring):

I concur in the dissent.

---

1. At the motion to suppress, the arresting officer testified that although he asked to see the defendant's car registration he does not recall looking at it once he saw the marijuana. It is clear to me that this officer was not in good faith checking the registration of a potentially stolen vehicle, but was simply using the request for registration as a pretext to discover crime in the first instance. This conduct was disapproved of by the Court of Appeals in *State v. Rosenberg,* 24 Ariz.App. 341, 538 P.2d 770 (1975).