860 P.2d 1320
**STATE of Arizona, Appellee,**
v.
**Joe Alonzo SERNA, Appellant.**
**No. 1 CA–CR 92–0546.**

Court of Appeals of Arizona, Division 1, Department A.

May 20, 1993.

Review Denied Nov. 4, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Div., and Crane McClennen, Asst. Atty. Gen., and Elliot H. Wernick, Certified Law Student, Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Deputy Public Defender, Phoenix, for appellant.

## OPINION

CONTRERAS, Judge.

Appellant Joe Alonzo Serna ("Defendant") was charged with possession of narcotic drugs, a class 4 felony. Pursuant to Defendant's agreement to waive a jury trial, he submitted his case to the trial court based upon a stipulated record. The trial court found Defendant guilty, suspended sentence, placed him on probation for four years, and sentenced him to six months' deferred incarceration as a condition of probation.

The drugs were found as a result of a warrantless search of Defendant (a stu-

dent) by public high school security guards. This appeal requires us to define the status of public high school security guards, the circumstances under which they may conduct a warrantless search of a student, and the scope of the search. We hold that public high school security guards employed by the school are agents of the high school principal. As such, they are "state actors" and any searches they conduct constitute state action. We further hold that a warrantless search of a student by a public high school security guard is subject to Fourth Amendment[1] considerations and is to be measured by the standard of reasonableness under all of the surrounding circumstances. In the present case, and pursuant to this standard, we determine that the search was reasonable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because there was no trial, the factual background is primarily based on evidence produced at a suppression hearing. On January 29, 1992, Earl Starks, chief of security at Carl Hayden High School, received a radio communication from the principal's office that he was to take his staff to the area of Moreland and 31st Avenue where a group of students was allegedly involved in a fight using sticks, rocks, and possibly weapons. Starks was instructed to bring back all Carl Hayden students involved in the fight. When Starks and several members of his staff arrived at the described location in the school's security van, they observed several students running away from the area and saw several sticks and rocks lying in the street. The security personnel also observed Defendant and another student step out from some oleander bushes and walk towards them. Starks testified that he saw Defendant take something from under the bushes and put it in his pocket.

As the security van pulled up next to Defendant, Starks asked if Defendant and his companion were Carl Hayden students. They responded that they were, and Starks then asked them for school identification. As Defendant pulled his class schedule out of his pocket, he also pulled out a portion of a plastic baggie, which was observed by Starks and one of his assistants.[2] Starks testified that he asked Defendant to hand him the baggie and that Defendant gave it to him. Starks further testified that he asked for the baggie because, based upon his training and experience, he knew that drugs are usually packaged in small plastic baggies similar to the one he saw. After dropping off the two students at the principal's office, Starks turned the baggie over to a Phoenix Police Officer for processing. The substance inside the baggie was later determined to be cocaine that was in useable condition.

Defendant's counsel filed a motion to suppress the evidence (baggie with cocaine). At the suppression hearing Defendant corroborated most of the security guards' testimony, except in one area. Defendant claimed that as he pulled his schedule out of his pocket, Starks asked him if he had anything else in there and Defendant replied that he did not. Defendant then testified that the next action Starks took was to reach inside Defendant's pocket and pull everything out of his pocket by turning it inside out.

The trial court denied Defendant's motion to suppress.[3] The trial court ruled that the actions of the chief of security for Carl Hayden High School "did not involve state action" since he was acting as a secu-

---

1. U.S. Const. amend. 4.

2. The assistant security guard, Robert Musa, testified that he had observed the baggie containing a white powder fall to the ground and that he then heard Starks tell Defendant to pick it up and give it to him.

3. The trial court did not make a specific finding as to whether he believed Starks' version, Musa's version, or Defendant's version of how the baggie was discovered in Defendant's possession. Our discussion and determination applies to whichever version was accepted.

rity guard pursuant to A.R.S. section 32–2634. Alternatively, the trial court judge ruled "if the security guard is considered a school official for fourth amendment purposes, *see New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the search was reasonable. The security guard's actions were justified at their inception and the search was reasonably related in scope to the circumstances." Subsequently, the case was submitted to the trial court based upon a stipulated record that included the police report, the legal memoranda supporting and opposing the motion to suppress, along with the testimony taken at the evidentiary hearing. The trial court found Defendant guilty. Defendant filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Defendant argues that the security guard's search violated the Fourth Amendment to the United States Constitution.[4] The determination of this issue requires a consideration of whether the search by the security guards constituted "state action" and whether the search was reasonable under all the circumstances.

*A. State Action*

■ As defined in A.R.S. section 32–2601, "Security guard" means "any person employed by a private security guard service as a private policeman ... watchman ... private security guard or other person who performs security guard services, but does not include any regularly commissioned police or peace officer." A.R.S. section 32–2634 further provides that "a person employed as a security guard shall not possess the authority of a regularly commissioned police or peace officer. Any duties performed by a security guard shall be performed in the capacity of a private citizen."

■ Preliminarily, we determine that Starks and his staff do not qualify as "security guards" as that classification is defined in A.R.S. section 32–2601. Although employed in a security capacity, Starks and his staff are not "employed by a private security guard service," but instead are employed by the government. Moreover, they serve at the direction and discretion of the principal of Carl Hayden High School, who is indisputably a government official. *See* A.R.S. §§ 15–502, 15–504 (school principals are hired by the school district governing board and are required to take the oath of office prescribed for public officials).

The school principal acts as a representative of the state in enforcing school disciplinary policies. *New Jersey v. T.L.O.*, 469 U.S. 325, 336, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985). The high school's security personnel are state actors based upon their status as agents of the high school principal. *See id.; see also In re Marital Trust*, 169 Ariz. 443, 444, 819 P.2d 1029, 1030 (Ct.App.1991) (agent is always a representative acting on behalf of another). Therefore, the action of the security personnel in this case is state action and must be measured by Fourth Amendment standards of reasonableness. *See T.L.O.*, 469 U.S. at 336–37, 105 S.Ct. at 740 ("underlying command of the Fourth Amendment is always that searches and seizures be reasonable" and "what is reasonable depends on the context within which a search takes place").

*B. Reasonableness of the Search*

■ The state has a substantial interest in providing an environment in which learning can take place. *See id.* at 339–40, 105 S.Ct. at 741–42. Because schools have a legitimate interest in creating a learning environment, they must maintain discipline

---

4. Without argument or citation to supporting authority, Defendant contends that the search in this case separately violated the right to privacy provision of the Arizona Constitution, art. II, section 8 (1984). Defendant's claim was not raised below. Consequently, Defendant's fail-

ure to argue and support this contention in the trial court and in his brief constitutes an abandonment and waiver of the issue. *See State v. Youngblood*, 173 Ariz. 502, 504–05, 844 P.2d 1152, 1154–55 (1993); *State v. Nirschel*, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987).

and ensure the safety of students on school property and on the way to and from school. *Id.* (schools require a "certain degree of flexibility in school disciplinary procedures" to maintain security and order); *see also* A.R.S. § 15–341(A)(14), (15) (school district governing board shall "[h]old pupils to strict account for disorderly conduct on school property" and shall "[d]iscipline students for disorderly conduct on the way to and from school"); Op.Att'y Gen. No. I89–035 (May 8, 1989) (school district authorized by law to adopt policy for safety of students who cross creek on way to and from school even though the creek is neither on nor adjacent to school grounds). As the Supreme Court has noted, this task has been made more difficult in recent years by the increase in "particularly ugly forms" of school disruption, such as drug use and violent crime. *T.L.O.*, 469 U.S. at 339, 105 S.Ct. at 741.

With these considerations in mind, the Supreme Court has held that, with certain predicate qualifications, a search warrant is not required when school officials search a student under their authority. *Id.* at 340, 105 S.Ct. at 742. Furthermore, because probable cause is not "an irreducible requirement of a valid search," the search of a student by a school official should be measured by the standard of reasonableness under all of the surrounding circumstances. *Id.* at 340–41, 105 S.Ct. at 742 (school setting generally requires some "modification of the level of suspicion of illicit activity" justifying the search, but the "concept of probable cause and the requirement of a warrant bear on the reasonableness of a search" and in certain circumstances neither is required). The *T.L.O.* Court set forth a twofold inquiry for determining the legality of a search by school officials. In establishing this test the Supreme Court stated:

> We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interest of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v. Ohio*, 392 U.S. [1], at 20, 88 S.Ct. [1868], at 1879 [20 L.Ed.2d 889]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*Id.* at 341–42, 105 S.Ct. at 742–43 (footnotes omitted).

In the present case, school security personnel were sent to investigate a fight in progress approximately two blocks from the school. The fight allegedly involved Carl Hayden students and the possible use of weapons. Classes had just been dismissed for the day, and the security guards were involved in supervising the students' departure from the campus. Upon their arrival at the scene of the alleged fight, the security personnel observed several rocks and sticks in the street and three or four students running from the scene. They also observed Defendant and another student step out from some oleander bushes. One of the guards saw Defendant reach for something under the bushes and put it in his pocket.

As Defendant and another student approached the school security van, the secu-

rity guards stopped and asked the two boys if they were Carl Hayden students. Defendant challenges the propriety of this brief investigatory stop for the purpose of determining whether he and his companion were involved in the alleged fight because he contends that he did nothing that would connect him to any participation in the fight or the possession of drugs. Defendant misconstrues both the applicable legal standard and its application to the facts of this case.

The Fourth Amendment does not prohibit, nor is it always invoked in, every personal encounter between the police (or state officials) and citizens. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). In this regard, an individual is "seized" for the purposes of the Fourth Amendment when an officer stops him "and restrains his freedom to walk away." *Id.* at 16, 88 S.Ct. at 1877. In the instant case, nothing approaching a seizure occurred upon the initial encounter of Defendant and Starks, the security guard. *See Florida v. Bostick*, —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) (seizure does not occur simply because a police officer approaches an individual and asks a few questions).

The knowledge that Defendant was possibly a Carl Hayden student, his proximity to the fight scene, the fact that weapons may have been involved, and the observation of Defendant coming out from some bushes nearby were sufficient reasons for the security guards' initial investigatory actions. *See Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (in appropriate circumstances, a police officer may approach a person to investigate possible criminal behavior even though there is no probable cause to make an arrest). Thus, the trial court properly found that the Carl Hayden security guards' actions were "justified at their inception." *See id.; T.L.O.*, 469 U.S. at 341, 105 S.Ct. at 743.

## C. Scope of the Search

Defendant argues that if it is assumed that the security guards' actions were justified at their inception, the search was not conducted in a manner reasonably related in scope to the circumstances that justified the initial intrusion. Defendant's argument regarding the scope of the search in this case is strained. Defendant contends that if the school officials were justified in their actions at all, they were justified in pursuing only evidence that would connect Defendant to the alleged fight and, therefore, the seizure of the baggie with its contents was not constitutionally justified. We disagree because this is not the law. *See, e.g., State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980) (although lacking sufficient information for probable cause to arrest, the Fourth Amendment does not require an officer to "simply shrug his shoulders and allow a crime to occur or a criminal to escape" (quoting *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881)). Again, as stated by the Supreme Court in *T.L.O.*:

> Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

469 U.S. at 342, 105 S.Ct. at 743.

In this case, there were numerous factors we have previously set forth that contributed to Starks' reasonable suspicion that Defendant had violated the law or school rules, including the possession of weapons. Under the standard applicable to searches of students, Starks clearly had reasonable grounds to suspect that a search of Defendant's pocket might uncover evidence of a violation of the law. *See id.* Consequently, the scope of the search was reasonable and the trial court did not abuse its discretion in denying Defendant's motion to suppress. *See id.; Jarzab*, 123 Ariz. at 312, 599 P.2d at 765.

We have reviewed the record for fundamental error pursuant to A.R.S. section 13–4035 and have found none. For all of the

foregoing reasons, the conviction and sentence imposed are affirmed.

EHRLICH, P.J., and KLEINSCHMIDT, J., concur.