525 P.2d 293

**STATE of Arizona, Appellant,**

v.

**Murray Dale WEITMAN and Kenneth Miller, Appellees.**

**No. I CA–CR 644.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 20, 1974.

Moise E. Berger, Maricopa County Atty. by James C. Braden, Deputy County Atty., Phoenix, for appellant.

Burton, Phelps & Clark by Jack L. Phelps, Scottsdale, for appellee Miller.

Harvey S. Brown, Phoenix, for appellee Weitman.

## OPINION

JACOBSON, Chief Judge.

By this appeal, the State of Arizona questions the granting of a motion to suppress the introduction of marijuana found in an automobile occupied by the two defendants.

In this matter, the manner in which the evidence was adduced is of importance. The appellees-defendants, Murray Dale Weitman and Kenneth Miller were originally charged by a complaint with possession of marijuana. A preliminary hearing was held by the Justice of the Peace of West Phoenix Precinct at which only one of the arresting officers testified. His testimony was basically that while patrolling in the area of 11th Avenue and Buckeye Road (near a place known as Top's Tavern) in Phoenix, Arizona, he and his fellow officer had occasion to stop a Chevrolet automobile containing three men, including the two defendants. As a result of this stop, various amounts of marijuana were found in the vehicle. As to the crucial basis for the initial stopping of the vehicle, the only testimony given was as follows:

"Q. How did you have occasion to come in contact with Mr. Weitman and Mr. Miller?

"A. Myself and Officer Bob Cartwright stopped Mr. Miller and Mr.

Weitman in their vehicle at 1100 West Buckeye Road, along with a young Negro male who was in the car with them.

"Q Would you describe the area of 11th Avenue and Buckeye?

"A. 11th Avenue and Buckeye consists of several social clubs, liquor stores, and a bar, two bars, and it's predominantly, 95 per cent black in that area.

"Q. Have you worked that area previously?

"A. Yes, I have.

"Q. Is that currently your beat?

"A. Yes, it is.

"Q. Are you acquainted with that area?

"A. Yes I am.

"Q. Now, when did you first notice Mr. Weitman and Mr. Miller?

"A. I first noticed Mr. Miller, or Mr. Weitman and Mr. Miller driving slowly in front of the Top's Tavern, which is on the south side at 1100 West Buckeye Road, with the young black male as a passenger in the car.

"Q. Would you describe where the individuals were seated in the car?

"A. Mr. Weitman was driving the vehicle, a '67 Chevrolet; Mr. Miller was in the back seat as a passenger, and the black male was in the front seat as a passenger, in the passenger seat.

"Q. Now where specifically did you make the first observation of their vehicle?

"A. They were immediately in front of the front door of Top's Tavern in their vehicle driving at a very slow pace.

"Q. Are you familiar with the Top's Tavern?

"A. Yes, I am, sir.

"Q. How have you become familiar with Top's?

"A. We watch Top's Tavern very closely daily as that is a general meeting point for most of the dopers and users and sellers of narcotics in that particular area.

"MR. BROWN: Objection, Your Honor; totally irrelevant.

"MR. WILKINSON: Your Honor, I think it's most relevant pertaining to the activities which took place at that location.

"MR. BROWN: If it isn't irrelevant, it calls for a conclusion, which has no basis."

(Whereupon an off-the-record discussion ensued).

"MR. BROWN: Thank you, Your Honor. Then it will be stricken?

"THE COURT: Yes; strike that."

And on cross-examination:

"Q. Okay. Now, you have testified that you first noticed Defendant Weitman's vehicle heading approximately in front of Top's Tavern at a slow pace. Would you consider that unusual in light of the circumstances?

"A. I have to take several things in consideration. Yes, I considered it unusual.

"Q. What things would you take into consideration?

"A. The fact of who was in the vehicle, who was in front of Top's or what they might have been looking at, the traffic situation at the time.

"Q. And taking all these factors into consideration you then decided to make a U-turn and stop the vehicle, is that correct?

"A. Yes."

Following the conclusion of the preliminary hearing, the defendant was bound over to superior court. After the filing of an information and an arraignment, the defendants filed a motion to suppress the introduction of the marijuana found in the vehicle on the grounds that it was obtained as the result of an illegal search and seizure. This motion was set for oral argument on August 28, 1973. No additional evidentiary testimony was taken at this hearing. At the conclusion of argument, the trial court took the matter under advisement in order to read the testimony

taken at the preliminary hearing. Subsequently, the trial court advised counsel that it desired to hear additional testimony and set an evidentiary hearing on September 12, 1973. On September 12, 1973, the State advised the Court that it was not prepared to proceed. The Court then continued the hearing until October 9, 1973.

On October 9, 1973, the State again advised the Court it was not prepared to proceed. On October 10, 1973, based upon the testimony taken at the preliminary hearing, the trial court granted the motion to suppress.

■■ The State contends that the "investigative stop" which took place here is authorized by the holding in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While constitutionally permissible investigative detention can occur on facts which would not give rise to the finding of probable cause, the facts must nevertheless "warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry v. Ohio, 392 U.S. at 22, 88 S.Ct. at 1880. State v. Ruiz, 19 Ariz.App. 84, 504 P.2d 1307 (1973). Moreover, the investigating officer must be able to "point to specific and articulable facts, which taken together with rational inferences from those facts [would] reasonably warrant the intrusion." Terry v. Ohio, *supra*, 392 U.S. at 21, 88 S.Ct. at 1880.

■ The state attempts to articulate facts by pointing out that the arresting officer was acquainted with the neighborhood; that the area of the arrest is predominately black; that Top's Tavern has a reputation for drug trafficking by the patrons and the officer knew most of the local residents and the defendants were strangers in the area; and that the officers, because of the defendants' age and being white, suspected they were in the area looking for either prostitutes or narcotics.

The problem with the state's "facts" is that they are simply not supported by the record. The only evidence introduced concerning the character of the neighborhood which might possibly give rise to suspicious actions on the part of the defendants was stricken by the Justice of the Peace. A motion to strike which is granted has the effect of removing the stricken testimony from consideration by the trier of fact—it simply does not exist for this purpose. We are not concerned here with the correctness of the Justice's ruling striking the evidence, for that correctness has not been challenged. Therefore, when the state elected to present this matter to the trial court based upon the record made at the preliminary hearing, it did so on a record containing all the flaws, factual or legal, present in that record, including the granted motion to strike.

The facts, then, which are present in the record show that on a Saturday afternoon, during daylight hours, three men were in a vehicle driving on a public street within the City of Phoenix, within the speed limit and slowed down briefly in front of a public tavern. Based upon these facts, there is nothing which would "warrant a man of reasonable caution" in believing that illegal activity was afoot. These facts are to be contrasted with those found in State v. Ruiz, *supra,* where we held that the character of the neighborhood was such that the physical presence of a man of Ruiz's nationality in that neighborhood could give rise to a reasonable suspicion on the officer's part, justifying an investigative detention.

We therefore hold that the state failed to show that the initial stop of the defendant's vehicle was constitutionally permissible. The stopping being improper, evidence obtained as a result of that stop was inadmissible.

The order granting the motion to suppress is affirmed.

HAIRE, P. J., and EUBANK, J., concur.