**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ROBERT L., Defendant–Appellant.**

No. 88–1168.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1988.

Decided May 15, 1989.

Jeffrey D. Bartolino, Tucson, Ariz., for defendant-appellant.

Janet K. Johnson, Asst. U.S. Atty., Tucson, Ariz., and Janet Patterson, Asst. U.S. Atty., Appellate Section, Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN, Chief Judge,
SNEED and HUG, Jr., Circuit Judges.

HUG, Circuit Judge:

The sole issue with which this appeal is concerned is whether, under all of the facts and circumstances, founded suspicion existed to justify the investigatory detention of a juvenile's automobile. Because we conclude that founded suspicion was lacking, we reverse.

## I. FACTUAL BACKGROUND

The parties largely agree on the underlying facts. It is the significance of those facts that they dispute.

On December 17, 1987, at approximately 1:45 p.m., Christopher Truty, a border patrol agent, was helping direct traffic at an accident scene north of Nogales, Arizona when he noted the approach of Robert L's car. Because traffic was limited to one northbound lane, motorists had to move slowly as they passed the accident site. Agent Truty saw another officer stop Robert L (apparently to instruct him to slow down), converse with him briefly, and then send him on his way. According to Truty, Robert L left the accident scene at a somewhat "quicker pace" than other traffic. Agent Truty also testified that the appellant glanced at him as he drove by and then turned quickly away, putting his eyes on the road.

Truty was aware that it had recently become customary in the Nogales area to use juveniles in the transportation of marijuana. He believed—erroneously as it turns out—that a youth of Robert L's age should have been in school at that time rather than driving along the highway. He also found suspicious the fact that appellant's car, an older model Oldsmobile Cutlass with an expansive trunk, was ideal for carrying large amounts of anything. Truty therefore decided to follow Robert L in the hopes of finding something to, as he put it, "further establish a probable cause or a founded suspicion."

Agent Truty and his partner entered their marked patrol unit and, without discussing their suspicions with the officer who had actually spoken to Robert L, set off in pursuit. Testimony indicates that they were traveling as fast as 90 miles per hour in the left lane when they reestablished contact with appellant's vehicle. When Robert L, who was also driving in the passing lane, saw the agents approaching, he moved over into the right lane. Agent Truty described this lane change as an "erratic maneuver," but there is no evidence that Robert L disrupted traffic or broke any traffic regulations by switching lanes.

When the patrol car pulled alongside Robert L's automobile, the two officers noticed another car behind it that was also being driven by a juvenile. It appeared to them that the two vehicles were traveling in tandem. At that point, the officers turned on their emergency lights and stopped appellant's car. As Agent Truty questioned Robert L, he noticed the smell of marijuana coming from the vehicle's interior. A subsequent search of the automobile's trunk uncovered 109 pounds of controlled substance.

Robert L was charged with possession with intent to distribute marijuana in an amount less than 50 kilograms in violation of 21 U.S.C. § 841(a)(1) (1982). Because he was a minor at the time of the offense, he was prosecuted under the relevant juvenile delinquency provisions of the Code. *See* 18 U.S.C. §§ 5031–5037 (1982 & Supp. IV 1986). Robert L moved to suppress all evidence collected as a result of his encounter with Agent Truty, contending that his car was stopped without sufficient cause and therefore in violation of the fourth amendment. After an evidentiary hearing, the district court concluded that Truty had founded suspicion to conduct the stop and denied appellant's motion. Robert L then pled guilty, but reserved the right to contest the suppression ruling. At sentencing, the district court suspended a finding of delinquency and placed Robert L on probation for the remainder of his minority. Robert L timely appealed, and this court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II. DISCUSSION

It is well settled that "[w]hen a law enforcement officer signals a motorist to stop by use of a siren or red light, there has been a seizure which must be justified under the Fourth Amendment." *United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976) (per curiam) (citations omitted); *see also United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir.1987) ("[t]he vast majority of automobile stops are initiated by police officers using flashing lights or a siren and are clearly fourth amendment seizures" (citation omitted)). Police officers, however, may make a brief investigatory stop of a moving vehicle, consistent with the requirements of the fourth amendment, if they are aware of specific, articulable facts leading to a reasonable or founded suspicion[1] that criminal activity is afoot. *United States v. Fouche,* 776 F.2d 1398, 1402 (9th Cir.1985); *Kerr,* 817 F.2d at 1386. In assessing whether a given set of facts constitutes founded suspicion, "the totality of the circumstances—the whole picture— must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). We review independently a district court's founded suspicion determination. *See Thomas,* 863 F.2d at 625 & n. 2.

In the instant case, the government advances a number of circumstances that it contends establish founded suspicion, thereby justifying the detention of Robert L's automobile: (1) eye contact with the police; (2) erratic driving; (3) driving in tandem with another vehicle; (4) the size of the trunk of the car; (5) the youthful appearance of the driver; and (6) the fact that a juvenile was driving during school hours. We address each in turn.

### A. *Eye Contact with Police*

The government first contends that, when Robert L glanced quickly at Agent Truty and then returned his eyes to the road, he was engaging in suspicious conduct that lends support to its assertion that sufficient cause existed to detain him. We have held in numerous cases that the manner in which a suspect looks at or avoids looking at an officer can be a factor in assessing whether criminal activity is afoot. *See, e.g., United States v. Magana,* 797 F.2d 777, 781 (9th Cir.1986), *modifying,* 775 F.2d 1354 (9th Cir.1985). Whether the visual contact or lack of it is furtive and suspicious, however, is highly subjective and must be evaluated in light of the circumstances of each case. *See, e.g., United States v. Pulido–Santoyo,* 580 F.2d 352, 354 (9th Cir.) (eye contact with police not suspicious but rather a "quite natural reaction" under the circumstances), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed. 2d 263 (1978).

Here, Agent Truty was standing in the midst of an accident scene directing traffic. There is nothing more natural, as those who have waited in traffic slowed by curious drivers will attest, than looking around the scene of a collision as one passes an accident site. In the context in which it was observed, then, Robert L's conduct seems more the norm than unusual, suspicious activity.

### B. *Erratic Driving*

We have also held that erratic driving is a factor that can properly support a finding of founded suspicion. *See United States v. Rocha–Lopez,* 527 F.2d 476, 478 (9th Cir. 1975), *cert. denied,* 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802 (1976); *see also United States v. Brignoni–Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) ("The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion." (citations omitted)). In the instant case, the government points to two examples of appellant's erratic driving: (1) Robert L left the scene of the accident at a "quicker pace" than other traffic; and (2)

---

1. "In this circuit the terms 'founded suspicion' and 'reasonable suspicion' are used interchangeably to describe the cause that is sufficient to justify an investigatory stop." *United States v. Thomas,* 863 F.2d 622, 624 n. 1 (9th Cir.1988)

(citing *United States v. Burnette,* 698 F.2d 1038, 1047 n. 16 (9th Cir.), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983)), *modifying* 844 F.2d 678 (9th Cir.1988).

when he saw the patrol car approaching, he "swerved" from the left lane into the right as if attempting to blend into traffic.

Robert L's deviations from normal driving were, it seems, relatively *de minimis.* Agent Truty acknowledged that appellant's departure from the accident scene in no way amounted to "peeling out" or other disruptive behavior. In addition, he admitted that Robert L's later lane change caused no traffic disturbance. First, we note that no traffic laws were broken; although this is not determinative, it is significant. *See United States v. Ogilvie,* 527 F.2d 330, 332 (9th Cir.1975) (noting that no traffic laws were violated when finding no founded suspicion); *United States v. Mallides,* 473 F.2d 859, 860 (9th Cir.1973) (same). Second, at least as far as his sudden lane change is concerned, Robert L's conduct seems perfectly reasonable given that a marked patrol car was approaching in the lane behind him at 90 miles per hour.

### C. *Driving in Tandem*

After Robert L changed lanes and the patrol unit pulled up alongside him, Agent Truty noticed another car, behind Robert L's vehicle, that was also being driven by a juvenile. Truty decided that the two cars were traveling in tandem, and this circumstance added to his suspicion that criminal activity was afoot. This circuit has recognized that traveling in tandem can be indicative of illegal smuggling activity. *See United States v. Larios–Montes,* 500 F.2d 941, 943–44 (9th Cir.1974) (driving in tandem, though not sufficient on its own to establish founded suspicion, is a factor that can be considered), *cert. denied,* 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709 (1975). Once again, however, the significance of this factor is undercut in the instant case by reference to the facts.

Agent Truty admitted that he had not noticed Mr. Grijalva–Florez, the driver of

the second car, at the accident scene or at any other time before he pulled alongside appellant's automobile. He also testified that all three vehicles travelled no more than approximately one kilometer together before he made the decision to stop Robert L. Thus, Truty's determination that the two cars were engaged in a joint venture was based only on the briefest of observations. *Compare United States v. Medina– Gasca,* 739 F.2d 1451, 1453 (9th Cir.1984) (extended observation of three vehicles traveling close together, parking bumper-to-bumper, and later traveling once again in tandem); *United States v. Saenz,* 578 F.2d 643, 646–47 (5th Cir.1978) (cars observed traveling together for 70 miles), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *United States v. Villarreal,* 565 F.2d 932, 936 (5th Cir.) (driving in tandem for approximately an hour), *cert. denied,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed. 2d 116 (1978). Further, there was no other evidence of a connection between the two drivers.[2]

### D. *Size of the Trunk*

As further justification for its detention of Robert L's vehicle, the government offers the fact that the car in question, an older model Oldsmobile Cutlass, had an expansive trunk that was as Agent Truty put it, "capable of carrying large amounts of anything." Since the Supreme Court's decision in *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), it is well settled that certain characteristics of the vehicle detained may support a finding of reasonable suspicion. In the instant case, however, the government has been unable to advance any evidence specifically linking appellant's car to those vehicles typically used in smuggling operations. The car was not specially outfitted in any way. Nor was it of a particular

---

**2.** As additional evidence of the tandem arrangement posited by Agent Truty, the government has attempted to advance the fact that Mr. Grijalva–Florez initially would not allow the agents to pull their vehicle in between the two cars after they had activated their emergency lights. However, only the factors that were present up to the time Agent Truty signaled Robert L to stop can be considered when making a founded

suspicion determination. *See Magana,* 797 F.2d at 780; *Morrison,* 546 F.2d at 320 ("The seizure occurs when the officer first communicates the command to halt. The command must be valid when given; its character is not changed by the motorist's response, any more than probable cause for a search can be established by what the search discloses."). Thus, this evidence must be discarded as irrelevant.

make or model that has been expressly linked to drug trafficking. In fact, Agent Truty admitted that a large number of cars have similar, or even greater, trunk capacity. Finally, no testimony indicated that appellant's trunk appeared to be heavily loaded, a circumstance that could legitimately be used as a means of differentiating between Robert L's car and other, similarly-situated vehicles. *See Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582; *United States v. Barnard,* 553 F.2d 389, 391 (5th Cir.1977). We cannot say that trunk size is wholly irrelevant to the founded suspicion calculus. However, where, as here, the automobile in question has no other distinguishing attributes, large trunk size provides scant support for the Government's assertion that its actions were justified.

### E. *Use of Juveniles in Drug Smuggling*

Agent Truty was aware that it had recently become customary in the Nogales area to use juveniles in the transportation of marijuana. Thus, when he noticed Robert L at the accident site, one of the things that initially drew his attention and aroused his suspicion was the appellant's youthful appearance. Age, like race, is an immutable trait possessed by a large number of persons that are completely innocent of any wrongdoing. Although it can be a factor contributing to a finding of suspicious circumstances, without more it falls far short of creating the articulable suspicion necessary for an investigatory detention. *Compare Brignoni–Ponce,* 422 U.S. at 885–87, 95 S.Ct. at 2582–84; *Magana,* 797 F.2d at 781 (Mexican appearance alone will not support a finding of founded suspicion, but it "can be considered as one factor in the determination whether to stop a vehicle"); *Mallides,* 473 F.2d at 861 (otherwise innocent conduct "does not become suspicious simply because the skins of the occupants [of a vehicle] are nonwhite").

### F. *School Attendance*

As a final circumstance supporting its contention that detention of appellant's vehicle was appropriate, the government offers Agent Truty's subjective belief that, at the time of the stop, Robert L should have been in school rather than driving along the road. In fact, since appellant's school releases its juniors and seniors at 1:30 p.m., Robert L's presence on the road at 1:45 p.m. was far from unusual. Further, it was established at the suppression hearing that Agent Truty had been living and working in the Nogales area for over two years at the time of the incident, and that the Border Patrol Station out of which he worked was less than a mile from Nogales High School. Testimony indicated that traffic would regularly back up in front of the Station at 1:30 p.m. as the approximately 700 juniors and seniors of Nogales High, 90 percent of whom drove cars, left school for the day. Under these circumstances, we find Agent Truty's belief that it was unusual for juveniles to be driving on the highway at 1:45 p.m. not only mistaken, but also unreasonable. We therefore decline to consider it.

### III. CONCLUSION

We conclude that given the facts of this case, only appellant's apparent youth and perhaps the size of his trunk could even arguably have contributed to a reasonable suspicion that criminal activity was afoot. Taken together, these factors are insufficient to justify the detention of Robert L's automobile. Thus, the district court's denial of Robert L's motion to suppress must be REVERSED.