943 F.2d 56
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Daniel MERKLE, Defendant-Appellant.
 No. 90-50622.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 13, 1991.
Decided Sept. 6, 1991.
 
 Before WALLACE, Chief Judge, and GOODWIN, Circuit Judge, and TANNER*, District Judge.
 MEMORANDUM**
 Arthur Daniel Merkle was stopped by Border Patrol agents while driving near Oak Grove, California. The agents, after searching the appellant's van, arrested him for possession of methamphetamine. The district court convicted him of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and the use and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).
 Prior to sentencing, a probation officer questioned Merkle on his prior record. The district court found that Merkle had obstructed justice by telling the probation officer that he had no prior record when in fact he did. Thus, the court enhanced his sentence by two points under Section 3C1.1 of the United States Sentencing Guidelines. The court then imposed a two-hundred and twenty-eight month custodial sentence. We affirm.
 I. The Founded Suspicion Claim
 Whether the police had reasonable suspicion to justify an investigatory stop is a mixed question of law and fact which we review de novo. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989).
 An individual's freedom from illegal searches and seizures is guaranteed by the Fourth Amendment of the United States Constitution. When a law enforcement officer stops a motorist, " 'there has been a seizure which must be justified under the Fourth Amendment.' " United States v. Robert L., 874 F.2d 701, 703 (9th Cir.1989) (quoting United States v. Morrison, 546 F.2d 319, 320 (9th Cir.1976) (per curiam)). An officer may, however, make a brief investigatory stop if he has a "reasonable" or "founded" suspicion that the person stopped is engaging in or is about to engage in a crime. See United States v. Collom, 614 F.2d 624, 628 (9th Cir.1979); Terry v. Ohio, 392 U.S. 1, 30 (1968). The officer must consider "the totality of the circumstances--the whole picture" before making a stop. United States v. Cortez, 449 U.S. 411, 417 (1981).
 In the landmark case of United States v. Brignoni-Ponce, 422 U.S. 873 (1975), the Supreme Court found that officers may not arbitrarily stop all persons of Mexican appearance without a reasonable suspicion that they are illegal aliens. The Court articulated certain factors that an officer should consider when determining whether there is reasonable suspicion to make an investigatory stop. These factors include: (1) the characteristics of the area in which the officer encounters the vehicle; (2) the proximity to the border; (3) the usual patterns of traffic on the road; (4) the officer's previous experiences; (5) whether there were any recent illegal border crossings; (6) the driver's behavior; (7) aspects of the vehicle itself; (8) whether the vehicle appears heavily loaded; and (9) the characteristics of the individuals in the vehicle. Id. at 884-85. Courts must weigh these factors in each case to determine whether the officers had a founded suspicion to justify a stop.
 In United States v. Magana, 797 F.2d 777 (9th Cir.1986), this circuit, after weighing the relevant Brignoni-Ponce factors, found that two Immigration and Naturalization Service ("INS") officers formed a reasonable suspicion to stop the appellant's vehicle. One of the officers saw a pickup truck with three males in the front seat and four males sitting on the floor of the truck in the pickup bed, which was covered by a canopy. The truck appeared equipped with helper springs and dual gas tanks, typical characteristics of vehicles transporting illegal aliens. Id. at 781 (citing Brignoni-Ponce, 422 U.S. at 885). The officers, based on these observations and suspecting that the occupants of the truck were illegal aliens, stopped the appellant's vehicle. The court found that these observations, when viewed together, were articulable factors which justified an investigatory stop.
 Similarly, the factors present when Border Patrol Agents Santos and Shartrand stopped Merkle's vehicle were sufficient to form a reasonable suspicion. The record indicates that the agents' suspicions were based on the following:
 (1) the van was travelling on Highway 79, a road frequently used to circumvent the Border Patrol checkpoint on Interstate 15;
 (2) on the day and time in question, the Interstate 15 checkpoint was in operation;
 (3) the van was seen at 1:20 a.m., when traffic is usually very light;
 (4) the usual traffic at that time consists primarily of local residents driving hay trucks, semi-tractor trailers, or persons returning from work at the California Department of Correction;
 (5) a van is a common vehicle driven by alien smugglers;
 (6) the van was registered to an Escondido, California, address, which is not a direct route on Highway 79;
 (7) the van was bouncing, indicating that it may be heavily loaded;
 (8) the windows of the van were covered, prohibiting the agents from seeing inside;
 (9) the driver of the van was a latin male; and
 (10) the driver failed to acknowledge the Border Patrol car parked perpendicular to the Highway as he passed.
 In addition, Agent Santos testified at trial that he was familiar with the vehicles belonging to the local residents of Oak Grove and that the appellant's van was not among them.
 In Magana, we found "the fact that the vehicle has characteristics common to those known to be employed in smuggling aliens is certainly relevant." Id. at 781. Similarly, the smuggling characteristics of Merkle's van were relevant factors for the agents to consider when determining whether to stop the appellant. The agents acted on an objective basis in light of their training and experience and formed a reasonable suspicion to justify stopping the appellant's vehicle.
 Appellant unduly relies on Hernandez-Alvarado, where the court found that Border Patrol Agents did not have a founded suspicion to stop appellant's car. The court held that considered jointly, the enumerated factors were insufficient to justify an investigatory stop. Hernandez-Alvarado, 891 F.2d at 1418. The court reasoned that "while [the factors] may allow certain inferences to be drawn, they describe too many individuals to create a reasonable suspicion that this particular defendant is engaged in criminal activity." Id. at 1418-19.
 Merkle's circumstances, however, do not describe the situation of "too many individuals." Merkle was driving a van at 1:20 a.m. on an infrequently travelled highway near the Mexican border. Agents Santos and Shartrand formed a reasonable suspicion based on objective facts that the appellant was involved in criminal activity. The agents took into account the time, the type of vehicle, and the direction of travel before stopping Merkle. Thus, under the totality of the circumstances, the agents had a reasonable suspicion to stop the appellant.
 II. The Obstruction of Justice Claim
 The district court's finding of fact on the obstruction of justice departure from the Sentencing Guidelines is reviewed for clear error. United States v. Rodriguez-Macias, 914 F.2d 1204, 1205 (9th Cir.1990).
 The Guidelines provide:
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.
 
 
 1
 U.S.S.G. § 3C1.1. The Commentary to this section provides that a sentence enhancement is appropriate when a defendant "engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise willfully interfere with the disposition of criminal charges...." Application Note 1(e) of the Commentary states:
 
 
 2
 The following conduct, while not exclusive, may provide a basis for applying this adjustment: ... furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court.
 
 
 3
 The district court found that Merkle's response to the probation officer concerning his prior record was a materially false statement under the Guidelines which warranted an upward increase of two levels. We agree.
 
 
 4
 When Merkle told the probation officer that he had no prior record he was knowingly telling a falsehood. Merkle's past criminal record includes a misdemeanor conviction for failure to provide proof of financial responsibility with respect to vehicle insurance; a conviction for failure to pay a fine; a conviction for driving with a suspended license; three convictions for having no driver's license in his possession and failure to appear; a misdemeanor conviction for unlawfully carrying a loaded firearm in public; and a misdemeanor conviction for driving under the influence.
 
 
 5
 Two recent Ninth Circuit cases held that an intentional misrepresentation to a probation officer constituted a material falsehood. In United States v. Baker, 894 F.2d 1083 (9th Cir.1990), the court held that the defendant's misrepresentation to a probation officer about his prior convictions amounted to an attempt at obstructing justice; thus, a two-level upward adjustment under the Guidelines was justified. The court stated that "a defendant's misrepresentation to a probation officer can lead at most to an inaccurate sentence computation and at least to a delay in ascertaining accurate information for the court." Baker, 894 F.2d at 1084.
 
 
 6
 Since Merkle's past criminal record was eventually discovered, Merkle argues that his misrepresentation was immaterial to his sentencing and thus could not possibly amount to an obstruction of justice under the Guidelines. But under Baker, this eventual discovery is irrelevant. If the misrepresentation was willful, then it amounts to an obstruction of justice. Actual obstruction need not occur. The Guidelines specifically provide for an "attempted" obstruction as well as an actual obstruction. See U.S.S.G. § 3C1.1. In Baker, the court noted that merely because the defendant's "rap sheet" was later secured by the probation officer, this did not excuse the defendant's willful misrepresentation. See Baker, 894 F.2d at 1084.
 
 
 7
 In United States v. Christman, 894 F.2d 339 (9th Cir.1990), the court similarly found that furnishing material falsehoods to a probation officer in the course of a presentence investigation was conduct which provided for a two-level sentencing increase under the Guidelines. In Christman, the defendant told the probation officer that a 1983 drug charge had been dismissed. Later he said that he had been convicted of only a misdemeanor. Subsequent investigation revealed that the defendant had been convicted of a felony drug charge. Id. at 342. The court found the defendant's obstruction of justice to be intentional and his conduct to be willful.
 
 
 8
 Merkle knowingly and falsely told to the probation officer that he had no criminal record. Thus, the district court's upward departure was consistent both with the Guidelines and with circuit precedent.
 
 
 9
 AFFIRMED.
 
 
 
 *
 Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3