924 P.2d 463

STATE of Arizona, Appellee,

v.

Daniel RICHCREEK, Appellant.

No. 1 CA–CR 95–0282.

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 29, 1996.

Review Granted Sept. 24, 1996.

**460**

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

GERBER, Judge.

Appellant Daniel Charles Richcreek (Richcreek) appeals his conviction for one count of theft, a class 4 nondangerous felony. The sole issue before us is whether the trial court erred when it refused to suppress all evidence against him. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

According to the record, the relevant facts are as follows: On April 9, 1994, Scottsdale Police Officer Robert DeHaven (DeHaven) investigated an abandoned, recently-wrecked automobile. DeHaven had over eighteen years of law enforcement experience. During his investigation at the site of the abandoned vehicle, he saw a car slow to a near stop ahead of the accident site, pull slightly to the side of the road and then speed away.

DeHaven later testified that "[a]t first I thought this is the driver or a relative or somebody coming back to tell us what's going on." He stopped the vehicle and Richcreek exited and began asking DeHaven questions about the accident. In response to DeHaven's request for identification, Richcreek produced a driver's license. DeHaven asked for the vehicle's registration and discovered that the car had been stolen.

Richcreek moved to suppress all evidence against him, consisting of DeHaven's report, a stolen vehicle recovery supplement and copies of the arrest/booking and vehicle recovery slips. The trial court denied his motion. After a bench trial, the court found him guilty based on these documents, suspended his sentence and placed him on probation for three years. He timely appealed. This court has jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) sections 12–120.21(A)(1), 13–4031 and 13–4033(A).

## ISSUE ON APPEAL

The sole issue before us is whether the trial court erred when it refused to suppress all evidence against Richcreek.

## ANALYSIS

Richcreek argues that the stop and subsequent seizure of his car was illegal because DeHaven did not have reasonable suspicion of wrongful activity. He urges us to follow *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), where the United States Supreme Court held that reasonable suspicion requires articulable facts coupled with reasonable inferences of criminal activity. *See also State v. Ochoa,* 112 Ariz. 582, 584, 544 P.2d 1097, 1099 (1976). Richcreek contends that he was merely "rubbernecking," which is not suspicious or criminal behavior. *See United States v. Garcia–Camacho,* 53 F.3d 244, 247 (9th Cir.1995). *See also United States v. Robert L.,* 874 F.2d 701, 704 (9th Cir.1989).

The state responds by saying that DeHaven acted reasonably. It urges us to follow *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968), where the United States Supreme Court held that a police officer may make reasonable inquiries when the officer suspects criminal activity. The state contends that DeHaven's stop and subsequent seizure of Richcreek's vehicle was reasonable given the totality of the circumstances. *See Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 694–95. It alleges that DeHaven observed behavior which led him, as an experienced police officer, to suspect criminal activity.

We agree with the state for two distinct reasons. DeHaven had "a particularized and

objective basis" for suspecting that Richcreek might have information relevant to the accident he was investigating. *See United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992), *modified*, 997 F.2d 1306 (9th Cir. 1993). At a minimum, A.R.S. section 28–667 requires police to investigate traffic accidents and interview potential witnesses, irrespective of the officer's independent suspicion of crime. Arizona law prohibits the abandoning of a vehicle; a companion statute provides that officers investigate such vehicles. A.R.S. § 28–1401.01(A) and (E). The occurrence of the accident, the abandoned vehicle and Richcreek's proximity to it constitute all the reason needed for the investigating officer to seek information from him about the abandoned vehicle. *See South Dakota v. Opperman*, 428 U.S. 364, 375, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976) (affirming validity of seizure pursuant to abandoned vehicle report based on noncriminal purpose of police activity). *See also Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) ("Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability . . . and engage in what may be described as community caretaking functions;" seizure pursuant to such a "community caretaking function" in wake of automobile accident given reduced scrutiny under Fourth Amendment as compared to seizure in criminal investigation).

█ In addition to the accident investigation justification, the facts also support a stop based on suspicion of a crime. The abandoned, wrecked vehicle on a lonely stretch of desert highway was made all the more suspicious by Richcreek's driving behavior, including his flight from the scene. In *State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979), our Supreme Court pointedly held that "an officer, when he commences an investigation, need [not] be convinced that 'criminal activity is afoot.'" The officer had reasonable cause to detain Richcreek for investigation based on the near-stop of his vehicle at the scene of the accident and its speeding away. DeHaven initially stopped him merely to obtain more information, not to arrest him. *See Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972).

The facts in this case differ from those in both *Garcia–Camacho* and *Robert L.* and from the Arizona case of *State v. Weitman*, 22 Ariz.App. 162, 525 P.2d 293 (1974), cited by the dissent. In those cases, officers stopped individuals without connection to activities under investigation, based on racial and often stereotypical prejudgments of criminal behavior. *Weitman*, 22 Ariz.App. at 162–63, 525 P.2d at 293–94; *Garcia–Camacho*, 53 F.3d at 245; *Robert L.*, 874 F.2d at 702. Nothing here indicates that Officer DeHaven based his suspicion of Richcreek on these types of assumptions. He detained Richcreek because he either might know something about the accident or be criminally involved. The discovery that Richcreek's car was stolen was incidental. Given these two separate justifications for the stop, the trial court properly denied Richcreek's motion to suppress the evidence against him.

### CONCLUSION

We have reviewed the record for fundamental error and have found none. For the reasons given above, we affirm Richcreek's conviction and sentence.

THOMPSON, J., concurs.

VOSS, Judge, dissenting.

By all appearances, this was an accident scene on a rural stretch of highway; there was an overturned vehicle off the side of the road and two police vehicles. That a motorist slowed, pulled slightly to the side of the road, and then accelerated and left the scene is not unusual. Unfortunately, "rubbernecking" is a common occurrence and tends to be more indicative of curiosity or good samaritanism than criminal activity.

Because I do not believe that the stop of Richcreek's vehicle was based on a reasonable suspicion of criminal activity, I respectfully dissent.

### THE ACCIDENT INVESTIGATION JUSTIFICATION

The majority states that DeHaven had a reasonable suspicion that Richcreek might

have information relevant to the accident he was investigating and cites A.R.S. §§ 28–667 and 28–1401.01 to support the stop. First, I disagree with the majority's statement that "[t]he occurrence of the accident, the abandoned vehicle and Richcreek's proximity to it constitute all the reason needed" for the officer to stop Richcreek. Majority at 461, 924 P.2d at 465. There is absolutely no evidence to connect Richcreek with the overturned vehicle. The majority's holding would allow an officer investigating any accident to stop any vehicle that slowed at an accident scene and caught the officer's eye. This rationale clearly goes beyond the type of search allowed under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Second, A.R.S. §§ 28–667 and 28–1401.01 alone do not authorize officers to stop motorists to ask for registration and a driver's license. The statutes merely require officers to investigate the scene, and after completion of that investigation, to write a report. Although the majority argues that these sections provide an independent basis to support a stop, the statutes do not support that argument;[1] and neither the state nor the arresting officer made that argument.

## CRIME SUSPICION JUSTIFICATION

The majority also states that Richcreek's conduct supports a reasonable suspicion that Richcreek was involved with criminal activity. This reasonable suspicion is based on Richcreek's near-stop, his pulling slightly to the side of the road, and his accelerating away from the scene. These facts are not sufficient to support a reasonable suspicion that Richcreek was involved in criminal activity.

First, the record does not support the majority's characterization of Richcreek's conduct. At different times, DeHaven described Richcreek as having "sped away," "suddenly took off," "suddenly accelerated," "accelerated," and "drove on." However, DeHaven never suggested that the speed of Richcreek's vehicle exceeded the speed limit or alone provided justification for the stop. The majority also states that DeHaven's reasonable suspicion was partially based on Richcreek's "flight from the scene." Majority at 461, 924 P.2d at 465. The record simply does not support this characterization. The record contains no evidence that Richcreek's departure from the accident scene was in any way motivated by a desire to avoid contact with the police. Actually, the record provides evidence tending to prohibit such a conclusion. DeHaven testified that there were two police vehicles at the scene of the rollover accident. If Richcreek desired to avoid contact with the officer, it makes no sense that he would have slowed to a near-stop next to two marked police vehicles in the first place. The majority's recitation of the facts creates the unjustified impression that Richcreek, upon sight of the police officer, fled to avoid detention. The arresting officer never suggested this and the record does not otherwise support such an impression.

Additionally, DeHaven's rationale for suspecting Richcreek is not sufficient to distinguish potential criminals from countless law-abiding citizens. The objective and articulable facts advanced to support a reasonable suspicion must not be likely to draw large numbers of innocent citizens into the category of persons subject to stops. *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754,

---

1. The relevant portion of A.R.S. § 28–667 states:
   A. Every law enforcement officer ... who ... investigates a motor vehicle accident resulting in bodily injury or death or damage to the property of any person in excess of one thousand dollars or the issuance of a citation, either at the time of and at the scene of the accident or thereafter by interviewing participants or witnesses, shall ... complete a written report of the accident.
   A.R.S. § 28–1401.01(A) and (E) provide:
   A. No person shall abandon a vehicle upon any street or highway or on any other public land, federal land, state trust land, national

forest, state park land, bureau of land management land or private property.
   E. An officer employed by a public agency or political subdivision who has removed an abandoned vehicle pursuant to this section or has removed or caused to be removed a vehicle pursuant to § 28–872 shall inspect the vehicle and shall complete the vehicle identification form prescribed or approved by the assistant director. The agency or political subdivision shall make inquiry to determine whether the abandoned vehicle is a stolen abandoned vehicle.

65 L.Ed.2d 890 (1980); *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *United States v. Rodriguez,* 976 F.2d 592, 596 (9th Cir.1992), *modified by,* 997 F.2d 1306 (9th Cir.1993); *State v. Master,* 127 Ariz. 210, 211, 619 P.2d 482, 483 (1980). The factors enumerated by the majority are insufficient to distinguish potential criminals from countless law-abiding drivers.

The majority cites to *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972), to say that DeHaven could stop Richcreek "merely to obtain more information." Majority at 461, 924 P.2d at 465. I do not believe *Williams* can be read so broadly. In *Williams,* the Supreme Court stated that a police officer may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 407 U.S. at 145, 92 S.Ct. at 1923 (citation omitted). While *Williams* does approve stops for purposes of obtaining information, the stop must be based on a reasonable suspicion that the person is engaged in *possibly criminal behavior.* The Fourth Amendment requires more than mere information regarding an event, it requires a nexus to some criminal activity. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Such a nexus has not been made in this case.

The record is devoid of anything that would lead reasonable people to suspect that either Richcreek or the overturned vehicle was connected with any illegal activity. Officer DeHaven was not investigating a suspected crime scene. Instead, he was investigating a one-car rollover accident. DeHaven does not state what crime he suspected Richcreek of committing. DeHaven stated simply that "something was afoot here involving this vehicle that I had that was not correct...." This statement fails to rise to the level of an objective, articulable suspicion that there has been a violation of the law and that Richcreek was involved.

Finally, the majority's holding is contrary to the controlling case law in this jurisdiction. In *State v. Weitman,* 22 Ariz.App. 162, 525 P.2d 293 (1974), this court upheld suppression of evidence seized as a result of a stop comparable to the stop in the present case. In *Weitman,* defendant's vehicle was stopped because it was travelling in an "unusual" manner in light of the circumstances. *Id.* at 163, 525 P.2d at 294. A police officer testified that the vehicle was stopped because it drove very slowly past a tavern, which the officer found to be unusual in consideration of "who was in the vehicle, who was in front of [the tavern] or what they might have been looking at, [and] the traffic situation at the time." *Id.* This court held that those facts did not warrant a reasonable suspicion that illegal activity was afoot. *Id.* at 164, 525 P.2d at 295.

The conduct of Richcreek in this case is no more supportive of reasonable suspicion than the conduct of the driver in *Weitman.* In each case, the state is attempting to establish a reasonable suspicion based upon nothing more than the driver of a car lawfully slowing down, observing an area, and returning to normal speed. In neither case, were there any facts to connect the driver to any illegal behavior. Stops were made in each case based only upon the officer's suspicion that something was unusual. Stops based upon this type of unsupported hunch fall below the standard articulated in *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880–81.

The majority also fails to adequately distinguish the facts of this case from two Ninth Circuit cases cited by Richcreek. In both *United States v. Garcia–Camacho,* 53 F.3d 244 (9th Cir.1995), and *United States v. Robert L.,* 874 F.2d 701 (9th Cir.1989), the Ninth Circuit Court of Appeals held that police lacked reasonable suspicion to detain motorists based on facts similar to this case.

In *Garcia–Camacho,* border patrol agents stopped a motorist based on factors including: the occupants of the vehicle looked straight ahead when passing the agents, did not acknowledge the agents, the truck was the type that could be used for smuggling, the truck appeared heavily ladened, the truck accelerated and made a lane change near the agents, and the occupants turned around and looked at the agents with a surprised look. 53 F.3d at 246.

Similar factors were advanced to support a stop in *Robert L.:* the driver's eye contact with police, driver left an accident at a faster pace than other vehicles, the size of the vehicle's trunk, the youthful appearance of the driver, and that a juvenile was driving during school hours. 874 F.2d at 703.

In both cases the Ninth Circuit held that the enumerated factors were insufficient to support a reasonable suspicion of criminal activity. 53 F.3d at 249, 874 F.2d at 705. I believe the facts of the present case are even less supportive of a reasonable suspicion than those enumerated in either *Garcia–Camacho* or *Robert L.* Nowhere did Officer DeHaven suggest that Richcreek met any profile of certain types of criminals. Officer DeHaven's decision to stop Richcreek amounted to little more than his hunch that something "was not correct." The *Terry* court specifically stated that it had refused to sanction stops "based on nothing more substantial than inarticulate hunches." 392 U.S. at 22, 88 S.Ct. at 1880.

## CONCLUSION

The stop of Richcreek was not based on a reasonable suspicion of criminal activity. The stop was not justified by either the accident investigation or the suspicion of a crime justifications cited by the majority. The conduct cited by the majority is insufficient to provide a "particularized and objective basis" for concluding that Richcreek either had information related to the accident scene or was engaged in criminal activity.

I, therefore, respectfully dissent.