930 P.2d 1304

STATE of Arizona, Appellee,

v.

Daniel RICHCREEK, Appellant.

No. CR–96–0224–PR.

Supreme Court of Arizona,
En Banc.

Jan. 21, 1997.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Consuelo M. Ohanesian, Phoenix, for State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Phoenix, for Daniel Richcreek.

## OPINION

FELDMAN, Justice.

Daniel Richcreek (Defendant) appeals his conviction for theft of an automobile. The sole issue before the court of appeals was whether the trial court erred when it refused to suppress evidence seized as a result of the stop of the vehicle Defendant was driving. The majority of the court of appeals affirmed. The dissenting judge concluded the evidence should have been suppressed. We agree with the dissent and reverse.

## FACTS AND PROCEDURAL HISTORY

On April 9, 1994, Scottsdale Police Officer Robert DeHaven (DeHaven) investigated a one-car, roll-over accident that occurred in the far north side of the city after midnight. The accident was near the intersection of Dynamite Road and Pima Road, an area described as desert and more like "county" road. There was no driver at the scene when the police officers arrived, so they proceeded to search the area for any injured passengers and to investigate the accident. As they did so, two or three cars passed the scene. According to the officer, these cars slowed by 5 to 15 miles an hour from 50 miles an hour as they came to the scene then accelerated after they had passed. Defendant drove past, slowing almost to a stop, and pulling over to the side of the road as he did. He then quickly accelerated and left. This piqued DeHaven's curiosity, as he thought that Defendant might be the missing driver of the wrecked car or a relative or friend of the driver returning to the scene. DeHaven, therefore, followed Defendant for a quarter to a half mile and pulled him over

to inquire about the accident. Defendant was not suspected of criminal activity and was not observed violating any traffic laws.

After pulling over, Defendant got out of his car and "stood in the middle of the street." Instead of walking straight back to the officer, he moved "kind of towards" the officer but also "kind of towards the street." DeHaven thought he looked nervous and like he might run away. DeHaven then asked Defendant why he had pulled over at the accident scene, and Defendant said that he felt that perhaps the officers at the scene "needed some help and that was his only interest" in the wrecked car. The officer said Defendant seemed willing to talk about the accident under investigation but not about himself. The officer asked to see Defendant's driver's license and registration. Upon running a check on Defendant's car, DeHaven learned it was stolen and arrested Defendant.

Defendant moved to suppress all evidence against him, including DeHaven's report and the reports concerning the stolen car. The trial court denied his motion and found him guilty in a bench trial of one count of theft, a class 4, non-dangerous felony. Defendant received a suspended sentence with three years probation. A majority of the court of appeals affirmed the trial court's decision. *State v. Richcreek*, 186 Ariz. 459, 924 P.2d 463 (1996). We have jurisdiction pursuant to Arizona Rule of Criminal Procedure 31.19 and granted review to determine whether the trial court erred when it denied Defendant's motion to suppress evidence seized as a result of a stop made for investigation not related to suspected criminal activity. *See* Ariz.R.Crim.P. 31.19.

## DISCUSSION

The court of appeals held the stop was reasonable, given the totality of the circumstances, as DeHaven had a "particularized and objective basis"—Defendant's driving behavior—for suspecting Defendant might have information relevant to the accident he was investigating. *See United States v. Rodri-*

*guez*, 976 F.2d 592, 594 (9th Cir.1992), *modified*, 997 F.2d 1306 (9th Cir.1993); *State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979). We assume, but do not decide, that the officer could have inferred that Defendant was a witness or knew something about the accident that would justify police addressing questions to him. We question, however, whether on this basis the police could follow and stop Defendant's car and ask for registration and identification in order to ask about the accident when DeHaven had no articulable suspicions that Defendant had been or was involved in criminal or other activities beyond the accident. Thus, the stop and subsequent request for Defendant's driver's license and car registration raise serious questions as to permissible search and seizure.

The law permitting police to stop and question citizens flows from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which the United States Supreme Court found that a police officer's brief detention of a person to make reasonable inquiries was permissible under the Fourth Amendment so long as the officer had articulable suspicions concerning possible criminal activity. Likewise, the police may stop vehicles when there are objective facts available raising a suspicion of criminal activities, although the Fourth and Fourteenth Amendments may be more firmly implicated because stopping and detaining the passengers of an automobile constitutes a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Even though the purpose of the stop may be limited and the detention brief, the governmental interests behind the intrusion must be balanced against the individual's Fourth Amendment rights. *Id.* at 654, 99 S.Ct. at 1396.

The question raised in this case, then, is how much of an intrusion by police is permissible when the individual to be stopped is not suspected of being involved in criminal activity? [1] *Terry* and most of its progeny seem to require that the police have

---

**1.** We are not concerned here with either administrative stops or stops as result of civil traffic      violations.

a founded suspicion the person they are stopping is involved in criminal activity. *See Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (arrest under Texas law for failing to give name to police violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe that defendant was engaged in or had engaged in criminal conduct). Again, this is particularly true with respect to automobile stops. *See United States v. Cortez*, which held that an automobile "investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

■ This court has noted, however, that the officer need not be convinced a crime has or will be committed but, rather, that "[w]hen confronted with strange or unusual activities, a police officer, as the public's representative delegated with the responsibility of maintaining law and order, should satisfy himself as to the innocence of the activity by all reasonable, lawful means." *Jarzab*, 123 Ariz. at 311, 599 P.2d at 764. In *Jarzab*, decided before *Cortez* and by a sharply divided court, the majority noted that suspicion of criminal activity was not required as "an essential ingredient for investigative stops, detention and questioning." *Id.* at 310, 599 P.2d at 673. Although the result in *Jarzab* was quite correct under the facts of that case, we believe the quoted language goes too far and conflicts with both earlier and later rulings of this court and subsequent cases of the U.S. Supreme Court.

In *Jarzab*, a police officer noticed a new Chevy Blazer in the desert about one quarter of a mile off Interstate 10. *Id.* at 309, 599 P.2d at 762. The time was about 1:40 a.m. and the truck appeared unoccupied. When the officer approached the vehicle to investigate, a man stepped out from behind some bushes. He told the officer that the truck was his and that he had stopped to relieve himself. The officer noticed that the man was young and smelled of alcohol and asked to see his driver's license, in order to determine if he was of age. When the man opened the door to the truck, the interior lights illuminated a bag of marijuana on the console. *Id.* The court found that the officers actions were not unreasonable, either when he stopped to investigate a truck seemingly abandoned off-road in the desert, or when he asked for the driver's license, because "[t]he scope of the intrusion was fleeting and minimal and reasonably related to the circumstances justifying it." *Id.* at 311, 599 P.2d at 764.

It was arguably not unreasonable for the officer to verify ownership of the vehicle seemingly abandoned in the desert before allowing Jarzab to drive the vehicle away. The officer stopped no one and detained no one. Furthermore, the stop in *Jarzab* would also be allowable because a police officer has a duty to investigate and remove abandoned automobiles under A.R.S. § 28–4834. Thus, his initial contact with the defendant was permissible. After speaking with the driver and noticing the odor of alcohol, the police officer then had reasonable suspicion to request his driver's license to determine if he was of age. Therefore, the court in *Jarzab* could have reached the same conclusion without broadening the stop and frisk power allowed under *Terry*.

■ But the facts of *Jarzab* are much different from those in the present case. Defendant did not claim ownership of a seemingly abandoned vehicle. There was no reason to believe he was engaged in criminal activity and yet he was followed, required to pull over and to produce his papers. We do not believe the Fourth Amendment permits this. The power of the police has been restrained because stopping and detaining an automobile and its passengers is a seizure within the meaning of the Fourth Amendment and requires a strong governmental interest to justify the intrusion. *Prouse*, 440 U.S. at 653, 99 S.Ct. at 1396; *Cortez*, 449 U.S. at 417, 101 S.Ct. at 695. Thus, cases discussing the police power to stop vehicles, detain, and question persons have required reasonable suspicion in connection with a crime that was about to be committed, *e.g., Terry*, or was being committed at the moment of the stop, *e.g., Cortez* and *Adams v. Williams* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), or had already been com-

mitted, *e.g., United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

When, as in *Jarzab*, the stop of an automobile is not involved, the Supreme Court has held that police officers may approach individuals at random in public places to ask them questions as long as a reasonable person would understand that he or she could refuse to answer. *Florida v. Bostick*, 501 U.S. 429, 431, 111 S.Ct. 2382, 2384, 115 L.Ed.2d 389 (1991); *see also Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ We believe, therefore, that the correct rule for automobile stop cases is contained in Arizona cases decided both before and after *Jarzab*. Random vehicle stops for inspection, when not based on reasonable suspicion of criminal activity, constitute an impermissible seizure under the Fourth Amendment. *State v. Ochoa*, 112 Ariz. 582, 544 P.2d 1097 (1976). "Stop of an automobile is permitted when based on a reasonable suspicion that the [driver or passenger was] engaged in criminal activity." *State v. Gonzalez–Gutierrez*, 927 P.2d 776, 231 Ariz.Adv. Rep. 6, 8 (1996) (quoting *State v. Maldonado*, 164 Ariz. 471, 474, 793 P.2d 1138, 1141 (App. 1990)). Hunches, intuition, and "unparticularized suspicion" are not enough. *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982). This rule conforms to the language and the principles expressed by the U.S. Supreme Court in *Brown, Cortez*, and a number of other cases. Insofar as the language in *Jarzab* would permit pursuit and stop, questioning and detention of auto drivers and passengers without a founded suspicion of criminal activity, the case is disapproved.

It may be argued that there is something of an inconsistency in this holding. Specifically, under *Terry*, the stop of a pedestrian to

ask questions, on any topic, is permissible. *See Terry*, 392 U.S. at 34, 88 S.Ct. at 1886, White, J., concurring ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way."). Likewise, the police have been authorized to question passengers on busses and in airports. *Bostick*, 501 U.S. at 433, 111 S.Ct. at 2386 (random questioning of bus passenger during scheduled stop, followed by consensual search); *see also Rodriguez*, 469 U.S. 1, 105 S.Ct. 308; *Delgado*, 466 U.S. 210, 104 S.Ct. 1758; *Royer*, 460 U.S. 491, 103 S.Ct. 1319. However, under the current status of federal law and the sphere of protection granted individuals within their vehicles, the forced stop of an automobile without at least articulable suspicion of criminal activity is an unconstitutional seizure under the Fourth Amendment.[2]

We believe, moreover, that the rule is sensible and pragmatically required by constitutional principle. Forced stops of an automobile are much different and more intrusive than simply addressing a question to a pedestrian encountered on the street or public conveyance. Such encounters in public places, including questions addressed to the persons encountered, are permitted "as long as police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 433, 111 S.Ct. at 2386. When the blue lights on the patrol car begin to flash, the person being followed does not feel free to ignore them and drive on. The idea that police may follow and pursue automobiles driven and occupied by persons not suspected of any criminal activity and may pull them over, detain them, and question them opens up vistas which we think go far beyond what is permitted by the Fourth Amendment.

---

2. We distinguish this case from the recent decision in *Ohio v. Robinette*, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), in which the Court held that a consensual search unrelated to the initial stop and after the suspect was free to leave was permissible, despite the officer's failure to inform the suspect of his freedom to leave. In the instant case there was no reasonable suspicion of criminal activity or traffic violation, whereas Robinette had been observed violating a traffic law which led to his stop.

## CONCLUSION

The officer's pursuit, stop, detention, and request for Defendant's identification papers were impermissible under the Fourth Amendment. Without a founded suspicion of criminal activity, evidence derived from an illegal search or seizure is "fruit of the poisonous tree" and should be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, we vacate the court of appeals' decision and reverse the judgment of the trial court. The court should have granted the motion to suppress. The case is remanded for proceedings consistent with this opinion.

ZLAKET, C.J., JONES, Vice C.J., and MOELLER and MARTONE, JJ., concur.